A89A2142, A89A2143. AMERICAN ALUMINUM PRODUCTS
COMPANY, INC. v. BINSWANGER GLASS COMPANY;
and vice versa.
(391 SE2d 688)

BEASLEY, Judge.

This appeal and cross-appeal involve a contract dispute about skylights at two commercial sites.

Binswanger Glass Company subcontracted with American Aluminum Products Company, Inc. (AAPCO) to furnish and install a metal framed entry skylight at Cumberland Center Office Building in Cobb County. Binswanger also subcontracted with AAPCO to manufacture and install metal frames for skylights at the Northern Telecom Plaza in Nashville, Tennessee.

AAPCO sued Binswanger alleging that it was indebted to AAPCO, on open accounts, $10,055 for manufacture and installation of the Cumberland skylight and $17,110 for the Northern Telecom skylights. AAPCO alleged that both debts were liquidated, the Cum-

berland one due and payable on July 3, 1985, and the Northern Telecom one on May 15, 1985. AAPCO asked for 18 percent interest per annum from those dates and reasonable attorney fees for bad faith and stubborn litigiousness.

Binswanger counterclaimed. As to Cumberland, it contended that under the contract as set forth in the purchase orders, drawings, and specifications, AAPCO's work was to be leak-free and that it failed to properly perform and complete its work. Binswanger alleged that leaks resulted from incomplete and defective work; it had incurred costs to complete, test, and correct AAPCO's work; and it was backcharged by the general contractor for repair work due to the leaking water falling on the terrazzo. It maintained that the remedial measures cost $13,921.03, exceeding the balance owed on the contract by $3,866.03 and entitling it to a set-off of $10,055. It denied that AAPCO was entitled to any sum under the contract and sought an affirmative recovery from AAPCO of $3,866.03 plus interest at 18 percent per annum.

Binswanger further contended that AAPCO failed to pay for $3,100.04 in materials purchased from it and demanded that amount plus interest for an open account or, in the alternative, for quantum meruit.

Regarding the Northern Telecom project, Binswanger alleged that under this contract also, as set forth in the purchase orders, specifications, and drawings, AAPCO's work was to be leak-free, and that AAPCO failed to properly perform and complete its work and failed to furnish the required written warranty. Binswanger maintained that the skylights leaked, causing it to incur costs to test, correct and complete the work. It claimed it was backcharged by the general contractor for repairs due to the leaks, repairs to the roof, and additional work caused by AAPCO's furnishing of improperly fitting skylight frames. These costs and backcharges allegedly totalled $55,755.33, exceeding the balance in the contract by $38,645.33. Thus, Binswanger claimed entitlement to a $17,110 set-off, zero for AAPCO and affirmative recovery on the Northern Telecom project for $38,645.33 plus interest at 18 percent per annum.

Binswanger further contended that on both projects, AAPCO breached the warranties that the materials and work would conform to the drawings and specifications, would be merchantable, of good material and workmanship, free from defects and fit for the intended purposes; AAPCO was liable for the costs asserted in the counterclaim under the indemnification provisions of the purchase orders; and AAPCO was liable for the costs claimed due to its negligent performance of its work, including unsatisfactory, improper, defective, and incomplete performance.

It asked for a total affirmative recovery on the counterclaim of

$45,611.40 plus 18 percent interest, plus the set-off.

Following a lengthy bench trial, the court issued its findings of fact and conclusions of law. It specified that as to the Northern Telecom project, AAPCO was entitled to $17,110 on its claim and Binswanger to $32,762.65 on its counterclaim, as to the Cumberland project, AAPCO was entitled to $10,055 on its claim and Binswanger to $16,156.98 on its counterclaim. The court awarded AAPCO a total of $27,165 and Binswanger a total of $48,919.63. It also concluded that certain damages, namely $3,748.06 in man hours and $3,912.67 in materials provided by Binswanger on the Northern Telecom job and $3,100.04 in materials purchased by AAPCO from Binswanger on the Cumberland job, were liquidated, entitling Binswanger to 7 percent interest from November 4, 1985, on these amounts.

AAPCO's appeal challenges eight of the court's specific findings and the court's admission of certain evidence. Binswanger's cross-appeal contends that pursuant to OCGA § 7-4-16 it was entitled to interest at 18 percent per annum rather than 7 percent per annum on the liquidated amounts.

### Case No. A89A2142

1. "A trial judge sitting without a jury is entitled to have his judgment considered as a verdict by a jury, and if there is any evidence to support the finding, it should be affirmed. Also the evidence must be construed most strongly in favor of the prevailing party. [Cit.]" *Anchor Sign Co. v. ITT Terryphone Corp.*, 138 Ga. App. 742, 743 (2) (227 SE2d 492) (1976).

AAPCO contends that the trial court erred in finding that as to both projects Binswanger's purchase orders constituted the contract between the parties. Its argument in this regard, is focused solely on the Northern Telecom project. Any such contention about the Cumberland contract is considered abandoned. Court of Appeals Rule 15 (c) (2); *Melton v. Gilleland & Sons*, 176 Ga. App. 390 (1) (336 SE2d 315) (1985).

There were two purchase orders. The first, dated October 29, 1984, called for "skylites per plans and specs" based on shop drawings to be submitted within two weeks and approved die drawings submitted by AAPCO. The second, dated March 13, 1985, called for AAPCO to furnish labor to install the "skylite metal frames" and all "flashings and brake shapes" per AAPCO's approved shop drawings.

AAPCO's position is that the first purchase order shows that the contract to manufacture and ship the skylights was a sale of goods covered by the Uniform Commercial Code so that the court should have considered the oral agreement and understanding of the parties that Binswanger wanted skylights like certain "Fisher drawings."

AAPCO concedes that the second purchase order is not governed by the UCC. It argues that it had no substantial deviations from the Fisher drawings, that Binswanger's counterclaim was based on specifications that AAPCO was not furnished, that in light of AAPCO's initial proposal ambiguity arose in the first purchase order because of the use of the terms "plans" and "specs," and that to incorporate the "specs" as contended by Binswanger would give the contract a totally unreasonable and unconscionable construction.

If the two purchase orders constitute but a single contract between the parties which involves furnishing both labor and materials, the UCC would not apply. The "UCC applies only to certain contracts for the sale of goods. [OCGA § 11-2-102.]" *Dixie Lime &c. Co. v. Wiggins Scale Co.*, 144 Ga. App. 145 (2) (240 SE2d 323) (1977).

We assume for the moment the UCC's inapplicability and apply instead common law contract theory. There is evidence to support the findings that inasmuch as Binswanger's October 29 purchase order contained terms at variance with AAPCO's initial proposal, the purchase order was a counteroffer, see *Frey v. Friendly Motors*, 129 Ga. App. 636, 637 (200 SE2d 467) (1973), which AAPCO accepted by beginning performance. See *Classic Restorations v. Bean*, 155 Ga. App. 694, 699 (5) (272 SE2d 557) (1980). There was evidence that following receipt of the purchase order, AAPCO lodged no objection to its terms, proceeded to manufacture the metal frames, and sent a supervisor to the job site. Using this analysis, the trial court did not err in finding that Binswanger's purchase orders (including the plans and specs), rather than AAPCO's proposal (and the Fisher drawings), constituted the contract between the parties.

Examining the first purchase order in light of the UCC, on the other hand does not aid AAPCO. "Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such cases the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of [the Uniform Commercial Code]." OCGA § 11-2-207 (3).

There was evidence that in both AAPCO's initial proposal and the October 29 purchase order referencing the "plans and specs" was the requirement that the skylights be water-tight or leak free. Further, a UCC analysis would not incorporate the Fisher drawings. Evidence shows that any reference to such drawings was not part of the parties' contract but at most were merely preliminary statements and part of the negotiations. Whether or not the drawings were included in the contract, AAPCO was not relieved from complying with the expressly incorporated plans and specifications.

As to AAPCO's ambiguity argument, the trial court could con-

clude that the terms of the contract were not ambiguous, which was a matter of law, see *Hearn v. Old Dominion Freight Lines*, 172 Ga. App. 658, 659 (1) (324 SE2d 517) (1984), and that they had the meaning ascribed by Binswanger.

There is no merit to AAPCO's bare assertion of unreasonableness and unconscionability.

2. The trial court did not err in finding that at AAPCO's request, Binswanger provided $3,748.06 in man hours to assist in installing the Northern Telecom skylights. AAPCO argues that such time was not on its "shop drawings."

There was evidence that AAPCO's field superintendent was authorized to obtain assistance from Binswanger, that Binswanger did supply men to assist, that records of the labor were kept, that the men were paid at the established rate on the basis of such records, and that the labor was expended as part of AAPCO's promised performance.

3. AAPCO contends that the trial court erred in finding that at AAPCO's request, Binswanger provided $3,912.67 in materials to complete installation of the Northern Telecom skylights. It asserts that the evidence supporting the claim was invoices for sealant which AAPCO's proposal and shop drawings excluded.

Contrarily there was evidence that the watertight skylights, AAPCO's contractual responsibility, required sealant to prevent leaks.

4. AAPCO contends the court erred in finding that the Northern Telecom skylights were defective because the skylights were just like the Fisher drawings and thus Binswanger got what it bargained for. This ignores the evidence that the Fisher drawings were not part of the contract, and more significantly, the evidence that the skylights leaked because of improper installation by AAPCO.

5. AAPCO contends that the trial court erred in finding that it did not take adequate and reasonable steps to correct leaks on the Northern Telecom skylight. It asserts that Binswanger's position was that the skylights were going to leak until the gutters were enlarged and that this was a design flaw not caused by AAPCO; that the work conformed to the "Fisher drawings" which had been furnished by Binswanger; that the implied warranty of fitness for a particular purpose under OCGA § 11-2-317 does not apply; that the Fisher drawings and shop drawings were technical specifications and as such, under the UCC, displace general warranty language; that Binswanger had to prove the defective quality of the goods; and that the proper measure of damages was governed by OCGA § 11-2-714 (2).

Contrary to AAPCO's assertion, there was evidence that the water damage was being caused not only by overflow from undersized gutters but also from lack of or improper sealing of the skylights.

Moreover, the court's order noted that the design defect in the gutters was accepted by Binswanger.

The argument that the work conformed to the Fisher drawings does not aid AAPCO because the court was authorized to find that such drawings were not part of the parties' contract. See Division 1, supra.

AAPCO's UCC argument does not stand up. Even if the UCC applies, Division 1, supra, there was evidence that the goods were not merchantable under OCGA § 11-2-314 (2) (c).

AAPCO's president testified that neither the Fisher drawings nor the shop drawings were specifications so AAPCO's claim of warranty displacement by the drawings fails.

There was evidence to support the finding that Binswanger carried the burden of proving the defectiveness of the goods. See Division 4, supra.

We do not consider AAPCO's concluding statements regarding the measure of damages under the UCC inasmuch as AAPCO may not expand its enumeration of error by argument in brief. See *Central Nat. Ins. Co. v. Dixon*, 188 Ga. App. 680, 681 (2) (373 SE2d 849) (1988).

6. AAPCO cites error in the court's finding that AAPCO was responsible for paying $5,459.60 for the services of Curtain Wall Design Consultants, which performed water tests on the skylights, because no sealing was required in the shop or Fisher drawings.

There was evidence, however, that sealants were part of AAPCO's contractual responsibility. AAPCO's own superintendent admitted that AAPCO was responsible for sealing the product and making it watertight.

7. AAPCO contends that the trial court erred in finding that the reasonable cost of repair of the Northern Telecom skylights was $19,642.32. It again asserts that the lack of sealant which was responsible for the majority of the leakage was not its responsibility and further that overhead, supervision, and profit were improperly added to the actual cost of repair.

The sealant argument is without merit. See Division 6, supra.

There was evidence to support the awarded amount including testimony about the number of necessary and reasonable man hours spent to correct AAPCO's work, daily time reports, the rate of labor, and the overhead and profit. Overhead and profit were properly considered in assessing the damages here. See *United States Fid. &c. Co. v. Blankenship Plumbing Co.*, 153 Ga. App. 335 (1) (265 SE2d 66) (1980); *Williams v. Kerns*, 153 Ga. App. 259, 260 (1) (265 SE2d 605) (1980).

8. Next attacked is the court's finding that Binswanger incurred costs of $13,056.94 to repair, correct, complete, finish, and test

AAPCO's work at the Cumberland project. It argues that Binswanger's claim improperly included costs of overhead, profit, and a "supervision and water test," that expected profit and overhead should be recoverable from the general contractor rather than a subcontractor, and that Binswanger failed to establish lost profits.

The overhead and profit argument is meritless. See Division 7, supra. AAPCO does not elaborate upon or pursue its challenge to the "supervision and water test," so we do not consider it. Court of Appeals Rule 15 (c) (2); *Melton v. Gilleland & Sons*, supra at 390 (1). Finally, AAPCO misdirects its "lost profits" contention. In its calculations of damages, Binswanger appropriately took into consideration profit on work performed on behalf of AAPCO. See *Williams v. Kerns*, supra.

9. AAPCO contends the trial court erred in admitting into evidence Binswanger's written specifications regarding the Northern Telecom project. It argues not only that the contract was ambiguous because of use of the terms "plans" and "specs" and that the specifications were not part of the contract, but also that if they had been, it would have made the contract unreasonable and unconscionable.

We have already determined that there was evidence that the contract was not ambiguous and incorporated the specifications. The specifications were thus relevant evidence.

In any event, "[a]dmissibility of evidence is a matter which rests largely within the sound discretion of the trial court, and if an item of evidence has a tendency to help establish a fact in issue, that is sufficient to make it relevant and admissible. [Cit.] . . ." *Lewis v. State*, 158 Ga. App. 586, 587 (1) (281 SE2d 331) (1981). Furthermore, "[w]here evidence is heard by the judge alone and without the intervention of a jury, it will be presumed that the judge considered only legal and admissible evidence, unless the record clearly indicates that the contrary is true. [Cit.]" *Barger v. Barger*, 238 Ga. 334, 335 (9) (232 SE2d 567) (1977).

AAPCO's bare conclusion of unreasonableness and unconscionability need not be addressed. Court of Appeals Rule 15 (c) (2); *Melton v. Gilleland & Sons*, supra.

10. AAPCO cites an abuse of discretion in admitting into evidence the deposition of Miller, Binswanger's project manager on the Cumberland project, because Miller was available to testify at trial.

The trial was conducted September 6 through September 8, 1988. Miller expected to be out of state for a new employer until approximately September 24. OCGA § 9-11-32 (3) (B) provides that a witness' deposition, whether or not a party, may be used by any party for any purpose if the court finds that the witness is out of the county, unless it appears that the absence of the witness was procured by a party offering the deposition. There was no such evidence.

Even Miller's availability would not preclude use of the deposition. OCGA § 9-11-32 (a) (4). The circumstances surrounding the taking of the deposition show that the notice was not unreasonable and that there was no abuse in the court's consideration of the testimony. Moreover, AAPCO does not show how it was harmed by admission of the deposition. An appellant must demonstrate harm as well as error. *Baldwin v. Walker*, 143 Ga. App. 382, 384 (2) (238 SE2d 695) (1977).

*Case No. A89A2143*

"The owner of a commercial account may charge interest on that portion of a commercial account which has been due and payable, [i.e., the date a statement of the account is rendered to the obligor unless otherwise provided in writing signed by the obligor,] for 30 days or more at a rate not in excess of 1 1/2 percent per month calculated on the amount owed from the date upon which it became due and payable until paid. 'Commercial account' means an obligation for the payment of money arising out of a transaction to sell or furnish, or the sale of, or furnishing of, goods or services other than a 'retail installment transaction' as defined in paragraph (10) of subsection (a) of Code Section 10-1-2." OCGA § 7-4-16.

The three items of the counterclaim which the court found to be liquidated and for which it allowed interest were attributable to labor and materials. These obligations qualified as "commercial" accounts. Binswanger requested interest at the rate of 18 percent per annum on damages stemming from both projects in its counterclaim and in the pretrial order.

As to the Cumberland project, the record discloses without dispute invoices to AAPCO for materials purchased by AAPCO from Binswanger in the total amount of $3,100.04, as found by the trial court. In fact, AAPCO concedes that such evidence "might be construed as a statement within the meaning of OCGA § 7-4-16." This due and payable liquidated debt, see *Typo-Repro Svcs. v. Bishop*, 188 Ga. App. 576, 579 (2) (373 SE2d 758) (1988), was subject to interest at the requested commercial rate of 18 percent per annum and the trial court erred in failing to award such interest on this amount. The judgment must be modified accordingly.

The trial court was correct however, in not awarding the commercial rate of interest for the $3,748.06 in man hours and the $3,912.67 in materials on the Northern Telecom project. While there is evidence supporting the amounts awarded, there was a dispute about whether or not the material, which was largely for sealant supplies and invoiced not to AAPCO but to Binswanger, and part or all of the labor expended, was utilized on behalf of AAPCO's contractual performance. Aside from the question of adequate statement of account re-

garding these charges to AAPCO, the debts were not liquidated because it was not certain how much was due Binswanger from AAPCO. See *Typo-Repro Svcs.*, supra at 579 (2). Even though the debts were not liquidated as the court found, the court was authorized to award 7 percent interest rate on these sums. Id. at 579 (2)-580.

*Judgment affirmed in Case No. A89A2142. Judgment affirmed in part and reversed in part with direction in Case No. A89A2143. Carley, C. J., and McMurray, P. J., concur.*

DECIDED MARCH 5, 1990.

*Bannister & Black, Charles C. Black*, for appellant.
*Stokes, Shapiro, Fussell & Genberg, Ronald J. Garber*, for appellee.