A91A2040. EMBRYO PROGENY ASSOCIATES et al. v. LOVANA FARMS, INC.
(416 SE2d 833)

ANDREWS, Judge.

Embryo Progeny Associates et al. brought suit against Lovana Farms, Inc., for breach of contract. The trial court granted summary judgment in favor of Lovana Farms holding that the claim was based on a contract for the sale of goods under the sales article of the Uniform Commercial Code (OCGA § 11-2-101 et seq.), and that the suit was barred by the four-year statute of limitation contained in OCGA § 11-2-725.

In 1982, Embryo Progeny's predecessor in interest and Lovana Farms entered into a lease agreement whereby Embryo Progeny leased a herd of seven registered breeding cattle from Lovana Farms. Using artificial insemination techniques, breeding cattle embryos were transplanted into recipient cattle which would give birth to the offspring. Contemporaneously, the parties entered into a maintenance agreement providing the terms under which Lovana Farms would breed the leased herd and maintain the offspring. Under the maintenance agreement, Embryo Progeny paid a fee to Lovana Farms for each successful transplant, and additional fees for weaning and maintenance of the offspring. Under the terms of the agreements, it is clear that Embryo Progeny obtained title to the embryos and the resulting offspring, and that Lovana Farms retained a security interest to secure payment of the fees.

On January 26, 1985, Lovana Farms and Embryo Progeny executed a mutual release agreement which by its terms superseded the lease and maintenance agreements, and provided for the mutual release of all claims arising out of the prior agreements. The release agreement was a means to terminate the prior agreements, define the existing rights of the parties, and set the terms and conditions for the temporary maintenance and eventual transportation of the offspring embryos and cattle from Lovana Farms to Embryo Progeny. A list of the offspring resulting from the embryo transplants was attached to the release agreement, and Embryo Progeny agreed to pay Lovana Farms for the costs of temporary maintenance and shipping of the cattle.

The record reflects that in December of 1986 Embryo Progeny complained that when the cattle were shipped pursuant to the release agreement, Lovana Farms failed to ship all of the cattle listed. On January 25, 1991, more than four years after the alleged breach, Em-

bryo Progeny filed the action at issue claiming that Lovana Farms breached the release agreement by failing to deliver all the cattle.

1. Embryo Progeny claims the trial court erred by applying the four-year limitation period set out in OCGA § 11-2-725 of the sales article, rather than the six-year limitation period for written contracts under OCGA § 9-3-24. The trial court concluded that the release agreement was a contract for sale of the offspring of the leased cattle, and the action was barred by the four-year limitation period of the sales article.

Although the release agreement, standing alone, was not a sale of the cattle, we nevertheless conclude that the four-year limitation period of the sales article was applicable. In effect, we view the release agreement as part of a sales transaction, the dominate purpose of which was the sale of cattle by Lovana Farms to Embryo Progeny. The breeding process and other maintenance services provided by Lovana Farms under the prior agreements were analogous to a manufacturing process to produce offspring from the leased breeding herd for purchase by Embryo Progeny. Even though services were a substantial part of and essential to the agreements, where "the essence and dominating purpose of the contract" was the production and sale of cattle, it is a contract for the sale of goods.[1] *Redfern Meats v. Hertz Corp.*, 134 Ga. App. 381, 392-393 (215 SE2d 10) (1975); Compare *OMAC, Inc. v. Southwestern Machine &c. Works*, 189 Ga. App. 42 (374 SE2d 829) (1988) (manufacture and sale of parts from materials supplied by buyer was, in essence, the sale of a service rather than goods).

By reciting that Embryo Progeny "shall retain title," the release agreement recognized that Embryo Progeny had already obtained title to the offspring at issue under the prior agreements.[2] In superseding the prior agreements, the release agreement did not undertake to restate all of the matters governed by the prior agreements, but only such that were necessary to conclude the sale.[3] After Embryo Progeny obtained title to the offspring pursuant to the breeding and maintenance process conducted by Lovana Farms under the prior agreements, the release agreement concluded the sales transaction by ter-

---

[1] Sales of cattle and other animals are transactions in goods under the sales article of the Uniform Commercial Code. See *Key v. Bagen*, 136 Ga. App. 373 (221 SE2d 234) (1975) (sale of horse).

[2] The seemingly contradictory language of the release agreement providing that Embryo Progeny shall not have title until all shipping charges on the cattle have been paid has only the effect of creating a security interest in favor of Lovana Farms. "Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest." OCGA § 11-2-401 (1).

[3] Although the terms of the release agreement may not be contradicted by the lease and maintenance agreements, the prior agreements may be consulted to show consistent additional terms which explain the present agreement. OCGA § 11-2-202.

minating the ongoing breeding process and providing for final delivery of the goods.

Embryo Progeny argues that a sale is defined as "the passing of title from the seller to the buyer for a price . . . ," and since title to the cattle was not actually transferred under the release agreement, it is neither a sale nor a contract for sale under the sales article of the Uniform Commercial Code. OCGA §§ 11-2-106 (1); 11-2-401. Accordingly, Embryo Progeny contends a breach of the release agreement should be governed by the six-year limitation period applicable to simple written contracts.

Although the cattle were produced and title to them obtained under the prior agreements, the release agreement played an essential part in consummating the sales transaction. "[T]ransactions in goods" to which the sales article of the Uniform Commercial Code applies, has been given a broader meaning than the sale of goods. See *Mail Concepts, Inc. v. Foote & Davies, Inc.*, 200 Ga. App. 778, 780 (409 SE2d 567) (1991) (citing *Redfern Meats*, supra, for the proposition that Georgia has extended the reach of the sales article to transactions analogous to sales). As such, we cannot agree that the release agreement was a severable portion of the total sales transaction which should be considered apart from the whole. See *Mail Concepts*, supra at 780 (sale of goods portion of contract, though set out separately, was not a severable portion of the total sales contract). Since the release agreement formed an indivisible part of the sales transaction, it is governed by the sales provisions of the Uniform Commercial Code. See *Flo-Mor, Inc. v. Birmingham*, 176 Ga. App. 375, 376 (336 SE2d 264) (1985) (sales contract for ongoing business was an entire transaction from which the sale of goods and services could not be divided); *Hudson v. Town & Country True Value*, 666 SW2d 51, 52-53 (Tenn. 1984) (though separate contracts executed, sale of business treated as a single transaction for purpose of determining application of Uniform Commercial Code). The trial court correctly concluded that the claim was barred by the limitation period of OCGA § 11-2-725. *Smith v. Dixon Ford Tractor Co.*, 160 Ga. App. 885, 887 (288 SE2d 599) (1982).

2. We need not address appellant's claim that the summary judgment order was also erroneously based on a misconstruction of the release provisions in the mutual release agreement.

*Judgment affirmed. Sognier, C. J., and McMurray, P. J., cocnur.*

DECIDED MARCH 6, 1992 —
RECONSIDERATION DENIED MARCH 19, 1992 —

*Andersen, Davidson & Tate, William M. Ray II*, for appellants.
*Lightmas & Delk, Frank A. Lightmas, Jr.*, for appellee.