## A92A1912. CROSBY et al. v. SPENCER.

(428 SE2d 607)

COOPER, Judge.

This appeal arises out of an action against appellants for damages resulting to appellee's peach orchard from the negligent spraying of appellants' adjacent cotton field. Following a jury verdict awarding appellee $93,007.45 in damages for future lost profits, appellants brought this appeal from the judgment entered on the verdict and from the denial of their motions for judgment n.o.v. and new trial.

The trial transcript reveals that appellee and his stepfather operated a fruit and vegetable farm in Brooks County, Georgia. In 1983, they expanded their farming operation and leased an additional 44 acres of land on which they planted peaches. Appellee and his stepfather also planted peach trees on another part of the farm (hereinafter referred to as "the homeplace"). The homeplace and the 44-acre tract were farmed as one unit. The peach trees on the 44-acre tract were planted at the same time as those on the homeplace and were of the same size, type, quality and general health. Appellee testified that the soil on the 44 acres was of the same kind and quality as that on the homeplace and that the trees on the 44-acre tract received the same kind of care and treatment as those on the homeplace.

In 1988, appellants, who had been in the cotton farming business for many years, began farming cotton on a tract of land adjacent to appellee's 44-acre tract. In previous years, appellants had sprayed their cotton crops with the herbicide MSMA, and on or about June 30, 1988, appellants sprayed the cotton crops on the new tract with MSMA. Appellants utilized an over-the-top manner of application rather than a method where the MSMA was applied at ground level. Between June 20 and June 25, 1988, appellee inspected the trees on both the 44-acre tract and the homeplace and observed that the trees were in good condition. However, during another inspection approximately two months later, appellee observed massive defoliation of the peach trees on the 44-acre tract while the peach trees on the homeplace remained in good condition. In December 1989, after consulting with numerous agricultural experts, appellee was forced to destroy the trees on the 44-acre tract. Appellee continued to harvest peaches on the homeplace through 1991.

Appellee presented expert testimony that MSMA is deadly to peach trees; that MSMA particles are capable of drifting through the air; that an over-the-top application is more susceptible to drift than application at ground level; that the damage to appellee's peach trees was caused by something that drifted from the direction of appellants' cotton; and that the damage to appellee's peach trees was typical of damage caused by drifting MSMA.

1. In their first enumeration of error, appellants contend that ap-

pellee's evidence of future lost profits was insufficient. Appellants argue that appellee failed to present any evidence regarding the production of the peach trees on the 44-acre tract between 1983 and 1989, and thus failed to establish a "track record" from which anticipated lost profits could be projected. See *Molly Pitcher Canning Co. v. Central &c. R. Co.*, 149 Ga. App. 5, 10 (4) (253 SE2d 392) (1979). During his testimony at trial, appellee explained that the average life of a peach tree is 12 years and that prior to 1988, he never had a full harvest of peaches because his peach trees were not fully grown. However, appellee was able to calculate the net profits he realized per tree on the homeplace for the years 1990 and 1991 and the projected per tree profits for the trees on the homeplace for the years 1992 and 1993. Appellee then applied the per tree calculations to the trees he lost on the 44-acre tract as a result of appellant's negligence and computed a net loss of $85,935.42 for the years 1990 and 1991 and a net loss of $69,090.35 for the years 1992 and 1993. "The rule against the recovery of vague, speculative, or uncertain damages relates more especially to the uncertainty as to cause, rather than uncertainty as to the measure or extent of the damages. Mere difficulty in fixing their exact amount, where proximately flowing from the alleged injury, does not constitute a legal obstacle in the way of their allowance, when the amount of the recovery comes within that authorized with reasonable certainty by the legal evidence submitted. [Cit.]" *Ayers v. John B. Daniel Co.*, 35 Ga. App. 511, 512 (1) (133 SE 878) (1926). Consequently, "[l]ost profits are recoverable as damages if such are shown with reasonable certainty. [Cits.]" *DeVane v. Smith*, 154 Ga. App. 442, 443 (1) (268 SE2d 711) (1980). Appellee presented evidence regarding the similarities between the trees and soil conditions on the 44-acre tract and those on the homeplace. Appellee then gave extensive testimony regarding his computation of lost profits from the 44-acre tract based on his calculation of net profits realized from the peach trees on the homeplace subsequent to the destruction of the trees on the 44-acre tract. We conclude that appellee's evidence provided the jury with a reasonable and sufficient basis to determine appellee's lost profits with respect to the trees on the 44-acre tract.

2. Appellants allege that there was insufficient evidence to allow the jury to reduce its award to present value. Appellee presented evidence that his total damages for future lost profits was $155,025.78, but the jury's award was only for $93,007.45. The trial judge charged the jury that any award for future losses should be reduced to present cash value and gave the jury a formula to assist them in that calculation. Appellants did not object to the charge, and we will presume that the jury's verdict properly reduced the award to its present value. *Union Camp Corp. v. Daley*, 188 Ga. App. 756 (6) (374 SE2d 329) (1988).

3. Appellants next argue that the trial court erred in admitting evidence regarding the homeplace orchard because the homeplace was a separate and distinct parcel of land from the 44-acre tract. " '[A]dmissibility of evidence is a matter which rests largely within the sound discretion of the trial court, and if an item of evidence has a tendency to help establish a fact in issue, that is sufficient to make it relevant and admissible. (Cit.) . . .' [Cit.]" *American Aluminum Prods. Co. v. Binswanger Glass Co.*, 194 Ga. App. 703, 709 (9) (391 SE2d 688) (1990). In light of appellee's evidence regarding the similarity of the two parcels of land and their proximity to one another and his testimony that he considered the parcels as one unit, we find no abuse of discretion in the admission of evidence regarding the homeplace.

4. In their fourth enumeration of error, appellants contend that the trial court erred in excluding evidence regarding the spraying of MSMA on another cotton field adjoining appellee's property. Appellants contend that the damage to appellee's peach orchard could have been caused by the owner of a cotton field which adjoined the west side of appellee's property. It is undisputed that appellee filed a separate lawsuit for negligent MSMA spraying against the owners of land adjoining the west side of appellee's property to recover for damage which occurred on the western side of appellee's property. However, appellee's claim against appellants was only for damage which occurred on the southern side of his peach orchard. The trial judge excluded evidence relating to any damage which may have been caused by the western property owners but ruled that if appellants could connect the spraying of MSMA by the western property owners with any damage occurring on the southern side of appellee's property, he would allow evidence of spraying by the western property owners. " 'Questions of relevancy of evidence, which includes the issue of materiality, are for the court, and in the absence of an abuse of judicial discretion, this court will not interfere. . . . (Cit.)' [Cit.]" *Hendricks v. Southern Bell Tel. &c. Co.*, 193 Ga. App. 264, 266 (4) (387 SE2d 593) (1989). There is no evidence in the record of any connection between the spraying from the west side and the damage allegedly caused by appellants. Consequently, the evidence was not relevant to the issues being tried, and we find no error in the trial court's exclusion of the evidence.

5. Similarly, we find no merit in appellants' argument that the trial court erred in excluding a bankruptcy reorganization plan filed by appellee in 1987. Appellants contend that the plan was relevant to show the financial condition of appellee's farm prior to the alleged negligence of appellants. The trial judge ruled that appellants could use the document to impeach appellee but that the filing of a bankruptcy petition per se was not relevant. We find no abuse of discre-

tion in the trial court's ruling as to relevancy. See *Hendricks*, supra.

6. Appellants also contend that the trial court erred in qualifying prospective jurors as to appellants' insurer and in excusing certain prospective jurors because of their relationship with the insurer. "It is proper to qualify the jury relative to the possible interest which the members may have in an insurance carrier having a financial interest in the outcome of the suit." *Weatherbee v. Hutcheson*, 114 Ga. App. 761, 764 (1a) (152 SE2d 715) (1966); see also OCGA § 15-12-135. Contrary to appellants' assertions, *Denton v. Con-Way Southern Express*, 261 Ga. 41 (402 SE2d 269) (1991) did not change the long-standing rule in this state regarding qualification of jurors.

7. Appellants' argument that qualification of the jury as to the insurer opened the door for evidence of the limit of their liability insurance is likewise without merit. " '(I)rrelevant matters of insurance coverage should be excluded from evidence. In the interest of justice, the matter of insurance which is not a germane issue, should be kept out.' [Cit.]" *Moore v. Price*, 158 Ga. App. 566, 568 (1) (281 SE2d 269) (1981).

8. Appellants complain that the trial court erred in refusing to charge the jury on comparative negligence. " 'It is axiomatic that a party cannot complain of the giving of an instruction to the jury unless he objects thereto before the jury returns its verdict, stating distinctly the matter to which he objects and the grounds of his objection. OCGA § 5-5-24 (a).' [Cit.] In the case sub judice, [appellants] never complained of the trial court's [failure to] charge on comparative negligence. Further, we find no blatant or prejudicial error in the charge of which the [appellants] complain. See OCGA § 5-5-24 (c). Consequently, this enumeration presents nothing for review." *Isaacs v. Williams Bros.*, 195 Ga. App. 812-813 (2) (395 SE2d 11) (1990).

9. In their final enumeration of error, appellants contend that the trial court erred in not allowing them to present sur-rebuttal evidence. The record reflects that appellee presented two rebuttal witnesses, after which appellants requested that they be allowed to call a sur-rebuttal witness. The testimony of appellee's rebuttal witnesses was merely cumulative of other evidence presented during appellee's case, and there were no surprises which resulted from their testimony. Compare *Haley v. Oaks Apts., Ltd.*, 173 Ga. App. 44, 46 (3) (325 SE2d 602) (1984). Furthermore, the witness appellants requested to call testified during appellants' case, and appellants did not indicate that the witness' testimony would be anything but cumulative of his previous testimony. Accordingly, we find no error with the trial judge's ruling.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

Young, Clyatt, Turner, Thagard & Hoffman, James B. Thagard, for appellants.

The Ellerbee Law Firm, O. Wayne Ellerbee, Clifton G. Spencer, for appellee.