petition, the Director alleges that in July of 1980, respondent was appointed personal representative of the estate of A.S. and, thereafter, in May 1983, was appointed personal representative of the estate of A.S.'s wife, K.S.; that, from 1980 through 1993, respondent charged and withdrew from the estates $136,705 in attorney fees, personal representative fees and other charges which were not justified or warranted by the services he provided; that, in addition, from 1983 through 1993, respondent failed to respond to numerous written and telephone inquiries from the Office of the Attorney General about the status of the funds in the estates and his failure to promptly administer and close the estates; and that, in 1993, the Office of the Attorney General petitioned to have respondent removed as personal representative of the estates, whereupon respondent restored the misappropriated funds plus interest to the estates. Respondent currently is 77 years old and is in the process of closing his practice.

Along with the above-described petition, the Director filed the parties' stipulation for discipline. In the stipulation, the respondent waived all of his procedural rights to hearings as provided in Rule 10(a), Rule 9 and Rule 14, Rules on Lawyers Professional Responsibility. Respondent also waived his right to interpose an answer and unconditionally admitted all of the allegations of the petition. Respondent joined with the Director in recommending that appropriate discipline pursuant to Rule 15, Rules on Lawyers Professional Responsibility, is an indefinite suspension for a minimum of 5 years. In the event respondent seeks reinstatement after 5 years, the stipulation states that respondent's right to reinstatement shall be limited to reinstatement to permanent retired status only.

The Court, having considered all of the facts and circumstances surrounding this matter, the petition of the Director, and the stipulation of the parties, NOW ORDERS:

1. That the respondent, Linn J. Firestone hereby is indefinitely suspended from the practice of law for a minimum of 5 years from the date of this order, pursuant to Rule 15, Rules on Lawyers Professional Responsibility.

2. That, in the event respondent seeks reinstatement at the conclusion of the above-described 5-year period, respondent may seek only to be reinstated to permanent retired status and any such reinstatement shall be conditioned upon the following:

a. Respondent's payment of costs in the amount of $750 plus interest, pursuant to Rule 24(d), Rules on Lawyers Professional Responsibility.

b. Respondent's compliance with Rule 26, Rules on Lawyers Professional Responsibility.

**VESTA STATE BANK, et al., Appellants,**

v.

**INDEPENDENT STATE BANK OF MINNESOTA, Defendant and Third–Party Plaintiff, Respondent.**

v.

**CLAYTON MANAGEMENT, INC., et al., Third–Party Defendants, Respondents.**

No. C6–93–150.

Court of Appeals of Minnesota.

Sept. 14, 1993.

Review Granted Nov. 16, 1993.

Clarance E. Hagglund, Britton D. Weimer, Hagglund & Weimer, Minneapolis, for appellants.

John Troyer, Briggs and Morgan, P.A., Minneapolis, for Independent State Bank of Minnesota.

Gary F. Albrecht, Christoffel & Elliot, St. Paul, for Clayton Management, Inc.

Considered and decided by AMUNDSON, P.J., and RANDALL and SHORT, JJ.

## OPINION

AMUNDSON, Judge.

Appellants challenge the district court's denial of their two motions to amend their complaint and the grant of summary judgment for respondents. Respondents cross-appeal, challenging the district court's partial denial of summary judgment. We affirm in part, reverse in part and remand.

## FACTS

In December 1981, appellants Vesta State Bank and State Bank of Belview jointly purchased a lease investment package from respondents Independent State Bank of Minnesota (ISBM), Clayton Management, Inc. (Clayton), and Lease Resources Corporation (LRC). Under the lease package, appellants became the lessors of agricultural lease equipment under a four-year lease to lessee Wendell Klockmann & Sons, Inc. (KSI).

ISBM acted as a broker in arranging for appellants to purchase the lease. LRC originated the sale of the combine and lease package, prepared the bill of sale and lease documentation, purchased the equipment, and then sold the lessor's interest in the equipment and accompanying lease to appellants. Clayton prepared some of the bill of sale and lease documentation and serviced the lease, collecting rental payments and remitting them to appellants. Appellants were substituted for LRC as the lessor. The lessee was Wendell Klockmann & Sons, Inc. Wendell Klockmann executed a written guaranty for the purpose of guaranteeing payment and performance of the lease.

KSI defaulted on the lease in 1983. Appellants sued KSI and KSI's president, Wendell Klockmann, in California and North Dakota. In this suit, Klockmann claimed he had no personal liability because he had signed the personal guaranty in his corporate capacity—i.e. as the president of KSI. The case against Klockmann individually was settled May 1, 1990 for $25,000. Appellants argue that this was a nominal recovery. They claim their damages are at least $145,988.27.

Appellants brought suit against ISBM in Minnesota in April 1987. Appellants alleged that ISBM represented that the lease was individually guaranteed by Wendell Klockmann, who had personal assets in excess of $2 million, that this representation was false and that ISBM was negligent for failing to obtain a proper guaranty. ISBM served a third-party complaint against Clayton and LRC in June 1987.

After discovering "additional evidence of misconduct" by ISBM, Clayton and LRC, appellants moved to amend their complaint to assert additional tort and contract claims, including fraud, against all three on December 4, 1987. The district court denied the motion on the grounds that the Minn.Stat. § 549.21 acknowledgment was lacking in the proposed amended complaint and that fraud was not pleaded with particularity. This court denied appellants' petition for discretionary review of the order denying the motion.

On May 24, 1988, appellants renewed their motion to amend, stating their fraud claim with greater particularity. The district court denied this motion based on the Uniform Commercial Code's four-year statute of limitations.

On October 31, 1992, ISBM moved for summary judgment on the personal guaranty claims. The district court granted the motion under an election of remedies theory. The court denied ISBM's motion for summary judgment on the alternative grounds urged by ISBM—(1) that the complaint is time-barred because of the UCC's four-year statute of limitations, and (2) that the written guaranty executed by Klockmann was signed in a personal rather than representative capacity as a matter of law.

Appellants challenge the district court's denial of the first and second motions to amend their complaint, and the district court's grant of summary judgment. ISBM

has cross-appealed the partial denial of its motion for summary judgment.

## ISSUES

1. Did the district court err by determining that appellants' personal guaranty claims are barred by the doctrine of election of remedies?

2. Did the district court err by denying appellants' first motion to amend their complaint for failure to include the Minn.Stat. § 549.21 acknowledgement language in the proposed complaint?

3. Did the district court err by determining appellants' claims were barred by the Uniform Commercial Code's four-year statute of limitations? Was the predominant purpose of the parties' agreement the sale of goods or the provision of services?

4. Did the district court err by refusing to determine that Klockmann's guaranty was enforceable as a matter of law under Minn. Stat. § 336.3–402?

## ANALYSIS

### I. *Election of Remedies*

■ On appeal from summary judgment, the role of the reviewing court is to review the record for the purpose of answering two questions: (1) whether there are any genuine issues of material fact and (2) whether the district court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). Summary judgment is proper when no material issues of fact exist and one party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03.

Appellants argue the election of remedies doctrine does not apply since there is no double recovery, there are distinct torts, and the claims or remedies are consistent.

ISBM argues that appellants' claims are barred under the election of remedies doctrine. ISBM argues that appellants, by accepting a settlement with Wendell Klockmann based on his personal guaranty, has accepted payment based on the contention that Klockmann's guaranty was enforceable. ISBM claims that it is inconsistent for appel-

lants to sue in Minnesota based on the contention that Klockmann's guaranty was not enforceable.

■ The election of remedies is the adoption of two or more coexisting and inconsistent remedies that the law affords on the same set of facts. *Hardware Mut. Cas. Co. v. Ozmun,* 217 Minn. 280, 287, 14 N.W.2d 351, 355 (1944). The purpose of the doctrine is not to prevent recourse to a potential remedy but to prevent double redress for a single wrong. *Northwestern State Bank v. Foss,* 293 Minn. 171, 177, 197 N.W.2d 662, 666 (1972).

■ In this case there is no double redress for a single wrong. The suit in California was against Wendell Klockmann and was based on Klockmann's failure to pay his obligation under the guaranty. The suit in Minnesota seeks relief against different parties—ISBM, Clayton and LRC. The suit also focuses on different actions—respondents' failure to obtain a valid guaranty and their representations regarding that guaranty. It is not based on any of Klockmann's actions. Since both the parties and the wrongs alleged in this suit are different, we conclude the election of remedies does not apply.

ISBM relies heavily on *Kohler v. State Farm Mut. Auto. Ins. Co.,* 416 N.W.2d 469 (Minn.App.1987). We believe *Kohler* is distinguishable. In that case, the injured party, Kohler, entered into a settlement stipulation that provided that his injury, "arose out of and in the course of his employment." *Id.* at 472. This stipulation was "diametrically opposed" to Kohler's subsequent claim that the injury arose when he was acting outside the scope of his employment. *Id.* In this case, however, the stipulation in the California case provided that it

should not be construed as an admission by any party of any liability or of any contention or allegation made by any other party.

Thus the stipulation in the California case is not "diametrically opposed" to appellants' current claims.

Accordingly, we conclude the district court erred in granting summary judgment based on an election of remedies theory.

## II. *Minn.Stat. § 549.21 Acknowledgement Language*

Appellants argue that the lack of the Minn. Stat. § 549.21 acknowledgement language did not render the first amended complaint defective.

■■■ The action of a district court in granting or denying a motion to amend pleadings will generally not be reversed absent a clear abuse of discretion. *See Warrick v. Giron*, 290 N.W.2d 166, 169 (Minn. 1980). However, if there is an allegation of a legal error, review is de novo.

The statute provides:

The parties by their attorneys in any civil action shall attach to and make a part of the pleading served on the opposite party or parties a signed acknowledgement stating that the parties acknowledge that costs, disbursements, and reasonable attorney and witness fees may be awarded to the opposing party or parties pursuant to subdivision 2.

Minn.Stat. § 549.21, subd. 1 (1992). This court has held that the absence of a signed acknowledgment is not a jurisdictional defect. *Haas v. Brandvold*, 418 N.W.2d 511, 513 (Minn.App.1988). Therefore, the district court erred in denying appellants' motion to amend on this basis.

## III. *Uniform Commercial Code's Four-Year Statute of Limitations*

Appellants argue the second amended complaint was not barred by the Uniform Commercial Code's four-year statute of limitations.

The threshold issue is whether the UCC applies to the lease. If the UCC applies, then its four-year statute of limitations would apply to this case and appellants' claims would be barred. *See* Minn.Stat. § 336.2-725 (1992). If the UCC does not apply, the six-year statute of limitations of Minn.Stat. § 541.05, subd. 1(1) (1992) would apply and appellants' claims would not be barred.

■■ When a transaction is for both goods and services, the applicability of the UCC is determined by whether "the substantial or predominant purpose" of the contract was the sale of goods or the provision of services. *Valley Farmers' Elevator v. Lindsay Bros.*, 398 N.W.2d 553, 556 (Minn.1987), *overruled on other grounds by Hapka v. Paquin Farms*, 458 N.W.2d 683 (Minn.1990). Classification of such a contract is generally a legal question. *Id.*

■■ We conclude that the predominant purpose of the lease was the provision of services. First, as the district court noted, appellants are bankers, not farmers. *Cf. Embryo Progeny Assocs. v. Lovana Farms*, 203 Ga.App. 447, 416 S.E.2d 833 (1992), *cert. denied* (Ga. July 16, 1992) (plaintiff contracted to receive offspring from leased breeding cattle). Second, respondents are in the business of putting together and servicing lease investment packages, not the business of selling farm equipment. *Cf. id.* (defendant provided cattle breeding and maintenance services). Third, the purpose of the transaction was to provide a stream of income, not farm equipment. *Cf. Kline Iron & Steel Co. v. Gray Communications Consultants*, 715 F.Supp. 135, 140 (D.S.C.1989) (purpose of contract was "to furnish a [television] tower"); *Embryo Progeny*, 416 S.E.2d at 834 (services of breeding and maintaining cattle "analogous to a manufacturing process to produce offspring from the leased breeding herd for purchase"). Under the agreement, appellants would only take possession if the deal did not work out—i.e. in case of a default. *Cf. Embryo Progeny*, 416 S.E.2d at 834 (under agreement, Embryo Progeny took possession of cattle, the alleged breach was a failure to deliver all the cattle). Since the contract was predominantly for the provision of services, not farm equipment, the six-year statute of limitations in Minn.Stat. § 541.05 applies to this case. Thus, the district court erred in denying the motion to amend the complaint.

Since we determine that the six-year statute of limitations is applicable, we do not reach the issues of whether the discovery accrual rule applies and whether the second

amended complaint relates back to the date of the first amended complaint.

## IV. *Enforceability of Guaranty*

ISBM argues that under U.C.C. § 3–403(2)(b),[1] Klockmann signed the guaranty in a personal capacity as a matter of law, and thus no parol evidence is admissible to prove he signed the guaranty in a representative capacity.

■■■ Article 3 of Minnesota's version of the Uniform Commercial Code applies to "negotiable instruments." Minn.Stat. § 336.3–102(a) (1992). A negotiable instrument is

> an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
>
> (1) is payable to bearer and to order at the time it is issued or first comes into possession of a holder;
>
> (2) is payable on demand or at a definite time; and
>
> (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of the obligor.

Minn.Stat. § 336.3–104(a). A guaranty is not a negotiable instrument. *Prime Fin. Group, Inc. v. Smith,* 623 A.2d 757, 759 (N.H.1993); *Gregoire v. Lowndes Bank,* 176 W.Va. 296, 342 S.E.2d 264, 267 (1986). First, since a guarantor promises to pay only on the condition the principal debtor fails to pay, a guaranty is not an "unconditional" promise to pay. *Prime Fin. Group,* 623 A.2d at 759. Second, since the amount payable depends on how much has been paid by the principal obligor, a guaranty is not a promise to pay a fixed amount of money. *Id.* Third, because payment under a guaranty depends on the

time of default by the obligor, it is not payable on demand or at a definite time. *Id.* Thus, Article 3 is not applicable to the guaranty in this case. Therefore, the district court properly refused to dismiss the action on the ground that the guaranty is enforceable as a matter of law under Minn.Stat. § 336.3–402.

## DECISION

The district court erred in granting summary judgment based on an election of remedies theory. The district court erred in denying the first amended complaint based on the lack of Minn.Stat. § 549.21 acknowledgment language. The district court erred in determining the second amended complaint was barred by the Uniform Commercial Code's four-year statute of limitations. The district court properly refused to dismiss the action on the ground that the guaranty is enforceable as a matter of law.

**Affirmed in part, reversed in part and remanded.**

SHORT, Judge (dissenting).

I respectfully dissent because the contract at issue was for the sale of goods, not services. *Compare* Minn.Stat. § 336.2–725 (1992) (four-year statute of limitations in contracts for sale) *with* Minn.Stat. § 541.05, subd. 1(1) (1992) (six-year statute of limitations). The record demonstrates: (a) Vesta purchased the lessor's interest in agricultural equipment; (b) the lessee had the option to purchase the equipment at the end of the lease; (c) if the lessee elected not to buy the equipment, Vesta owned or could release the equipment; (d) when the lessee defaulted, Vesta went to California to replevin the property; (e) Vesta enjoyed tax investment credits and depreciation benefits from ownership of the goods; (f) all services rendered under the contract were related to completion of the sales transaction; and (g) none of the alleged services was priced separately. Under these facts, the transaction's dominant purpose was the sale of goods. *See Embryo Progeny Assocs. v. Lovana Farms, Inc.,* 203 Ga.App. 447, 416 S.E.2d 833, 834 (even

---

1. The corresponding Minnesota provision is Minn.Stat. § 336.3–402 (1992).

though services are a substantial part of and essential to the agreement, where the contract's dominant purpose is the sale of goods, it is a contract for the sale of goods), *cert. denied* (Ga. July 16, 1992). The transaction thus is governed by Article 2 of the Uniform Commercial Code, and the four-year statute of limitations provided in Minn.Stat. § 336.2–725 bars Vesta's claims. *See Superwood Corp. v. Siempelkamp Corp.*, 311 N.W.2d 159, 162 (Minn.1981) (the U.C.C. clarifies the rights and remedies of parties to commercial transactions), *overruled on other grounds by Hapka v. Paquin Farms*, 458 N.W.2d 683 (Minn.1990). I would affirm the trial court.