A96A0224. SOUTHERN TANK & EQUIPMENT COMPANY
v. ZARTIC, INC.
(471 SE2d 587)

BEASLEY, Chief Judge.

Southern appeals from the grant of Zartic's motion for summary judgment in this breach of contract case. The trial court determined that suit was filed after the time limitation in OCGA § 11-2-725 had passed.

Southern quoted a price of $77,000 to supply Zartic with a chemical mixing tank and an associated pump and sump. Southern would install it but excavation, foundation, and electrical work would be supplied by other contractors. Further discussions resulted in Southern agreeing to supply an associated "water treatment assembly" composed of a system of pipes and valves to specifications, for an additional $62,000, resulting in a total price of $139,000. Southern contends the project was substantially completed in September 1987, but Zartic claims the work was not completed. The parties agree that, for purposes of summary judgment in the context of OCGA § 11-2-725, Southern's cause of action arose in September 1987.[1] The contract is evidenced by a variety of documents including letters and an order form signed by both parties.

The contract called for staggered payments, and Southern received $100,000 but not the final $39,000. Suit to recover that amount, plus interest, attorney fees, and costs, was filed February 12, 1993. The court held that the contract was for the sale of goods and thus suit was barred by the four-year statute of limitation found in OCGA § 11-2-725, part of the Uniform Commercial Code. Southern contends the contract was not for the sale of goods, the applicable statute of limitation is in OCGA § 9-3-24, and suit could be filed any time within six years of the contract's completion.

As the trial court noted, this contract calls for a mixed sale of goods and services, and the case of *J. Lee Gregory, Inc. v. Scandinavian House, L. P.*, 209 Ga. App. 285, 287-288 (1) (433 SE2d 687) (1993), provides guidance on classifying such contracts. "When the predominant element of a contract is the sale of goods, the contract is viewed as a sales contract and the UCC applies 'even though a sub-

---

[1] Although there is evidence Southern performed some minor portion of the contract in 1991, neither party suggests this affects Southern's cause of action based upon a September 1987 substantial completion.

stantial amount of service is to be rendered in installing the goods.' [Cit.] When, on the other hand, the predominant element of a contract is the furnishing of services, the contract is viewed as a service contract and the UCC does not apply. [Cit.] As it is said: ' " '(A) contract for services and labor with an incidental furnishing of equipment and materials' is not a transaction involving 'the sale of goods' and is not controlled by the (UCC). (Cits.)" [Cit.]' [Cits.]" Id. Factors to be considered in determining the predominant element of a contract include the proportion of the total contract cost allocated to the goods and whether the price of the goods are segregated from the price for services. A smaller proportion of the total price assignable to services, or a failure to state a separate price for services rendered, suggest a contract for the sale of goods with services merely incidental. Id.

Contrary to Southern's suggestion, *American Aluminum Products Co. v. Binswanger Glass Co.*, 194 Ga. App. 703 (391 SE2d 688) (1990), which involved a contract for the installation of window frames, does not stand for the proposition that any contract involving a mixture of labor and materials is outside the coverage of the UCC. That opinion specifically did not decide whether the UCC applied to the contract at issue; instead, it analyzed the case under alternative assumptions that the UCC did and did not apply, reaching the same result regardless. Id. at 705-707 (1), 707-708 (5). The factors discussed in *J. Lee Gregory*, supra, are those applied to determine the predominant element of a mixed contract.

The parties agree that the contract initially called only for sale, delivery, and installation of a chemical mixing tank, which evidence showed had a quoted price of $77,000.[2] Southern does not dispute that this alone would be a contract for the sale of goods. Thus over half the total contract price was allocated to this purchase, predominately for one piece of equipment, with the remaining $62,000 including both goods and services. Although Southern refers to the later incorporated sale as a "system," it is also undisputed that this portion of the contract covered not only the installation of additional pipes, valves, and associated material, but the sale of those materials as well. There is no suggestion that these materials were anything other than "goods" as the term is used in the UCC: " 'Goods' means all things (including specially manufactured goods) which are mova-

<hr>

[2] Although the documents and deposition testimony recite the quoted price for the original tank as $77,000, the parties occasionally refer to the price as $75,000. It appears some confusion has been caused by the fact that the first price quoted for the "water treatment assembly" was $75,000, although that was later changed to $62,000. Whether the agreed upon price for the original tank was $77,000 or $75,000 makes no difference to the analysis on appeal.

ble at the time of identification to the contract for sale." OCGA § 11-2-105 (1). Further, the $62,000 allocated to this portion did not segregate the price of the materials from the price of the services; the only prices segregated were the $77,000 for the original chemical mixing tank and the $62,000 for the water treatment components.

As in *J. Lee Gregory*, "[i]t can hardly be said that the sale of the [tank and other material] was 'incidental' to the transaction. Rather it would appear that the rendition of services was the incidental factor." Id. at 288. The undisputed evidence showed the contract was first formed for a mixing tank with other subjects added later. The portion of the transaction that Southern argues requires the entire contract be considered one for services rather than goods concerns the services attributable to the later-added water treatment assembly. That assembly itself called for both goods and services, with no breakdown between goods and services. The portion of the cost attributable to this combination of goods and services accounted for less than half the total price; any breakdown of the costs for the water treatment assembly would necessarily show an even smaller fraction devoted to services.

Viewing these facts in the light of *J. Lee Gregory*, supra, we must conclude that the essence and dominating purpose of the contract was the sale of goods. See also *Embryo Progeny Assoc. v. Lovana Farms*, 203 Ga. App. 447, 448 (1) (416 SE2d 833) (1992). Southern's reference to the installed piping and valves as a "system" does not change the conclusion that the contract primarily called for the purchase of tanks and associated materials, with installation services incidental.

We reject Southern's contention that a jury must make a factual determination whether the contract was for goods or services. The determination of whether the contract was one for goods may be made on a motion for summary judgement when the facts necessary for that determination are undisputed. See *J. Lee Gregory*, supra; *Embryo Progeny*, supra; *Mail Concepts v. Foote & Davies, Inc.*, 200 Ga. App. 778, 779-780 (1) (409 SE2d 567) (1991). The trial court properly concluded from the evidence that the contract was for the sale of goods, governed by the UCC, and that suit was barred by the failure to file within four years of September 1987.

*Judgment affirmed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED MAY 23, 1996.

*Smith, Price & Wright, Charles G. Price*, for appellant.
*Shaw, Maddox, Graham, Monk & Boling, David F. Guldenschuh*,

for appellee.

