### 4205. COUNCIL *v.* HIXON.

1. The demurrer was without merit.
2. Where an auditor was regularly appointed, but no time was specified within which his report was to be filed, and the case was continued for several terms, and the time for making the report extended; and where an order was finally passed, during term, by consent of all parties at interest, requiring the auditor to file his report by a specified date, "or, in default thereof, that said cause be withdrawn from the consideration of said auditor," and the report was not filed until after the time thus specified, there was no error, on the call of the case for trial, in sustaining a motion to disregard the report of the auditor and ruling the case to trial before a jury.
3. The plaintiff proved his case as laid, and the evidence authorized a recovery in his favor, upon the theory that the defendant had contracted to pay for the services rendered by the plaintiff an amount based upon the value of the timber, title to which had been acquired by the defendant as a result of the plaintiff's services.
4. Where one agreed to pay an attorney, for professional services to be rendered, five per cent. of the value of certain timber, title to which was to be acquired as a result of the attorney's efforts, the claim of the attorney for compensation became, upon the performance of the services, a liquidated demand, and, as such, bore interest from the date it became due, notwithstanding the contract provided that in the event of disagreement as to value, the owner of the timber should submit to the attorney a "give-or-take proposition," and he thereafter refused to do so.

DECIDED DECEMBER 10, 1912.

Complaint; from city court of Americus—Judge Nicholson presiding. March 25, 1912.

*DuPont Guerry, E. A. Hawkins,* for plaintiff in error.

*R. L. Berner, Ellis, Webb & Ellis, Shipp & Sheppard,* contra.

POTTLE, J. Hixon sued Council to recover $17,471.11, alleged to be due for services rendered the defendant by the plaintiff as an attorney at law, and for expenses incurred during the rendition

of such services. The petition made substantially the following case: The defendant desired to acquire a large tract of pine timber, growing upon 86½ lots of land in Clinch and Echols counties, known as the "Hawkins land." He knew that the title to this land was clouded and uncertain, that he would have great difficulty in procuring a good title, and that the services of experienced and competent attorneys would be necessary to pass upon the title and represent him in the litigation which it was anticipated would result from an effort to cut the timber. In July, 1907, he contracted to buy the "Hawkins title" to the timber, upon condition that the title should prove to be legal and valid. On September 4, 1907, he entered into a written contract with the plaintiff and Shipp & Sheppard as attorneys to represent him and the Suwanee Land & Lumber Company (a corporation which had taken over the Hawkins title) in certain litigation then pending in Clinch superior court, and in all future litigation against him or the corporation concerning the title to the Hawkins land and the right to cut the timber therefrom. He agreed to pay the plaintiff and Shipp & Sheppard each $500 as a retainer, and $10 per day and expenses while away from their offices upon business connected with carrying out the contract. The contract further provided: "It is further contracted, stipulated, and agreed that the said C. M. Council will give to the said J. A. Hixon the sum of five per cent. of all of said lands that may be recovered, or the value thereof, to which title may be successfully adjudicated into the Suwanee Land & Lumber Company, whether litigated or not; and shall give to the said Shipp & Sheppard a like amount of five per cent., or the value thereof, of all of said land that may be recovered and title thereto settled, which said per cent. has been accepted as an additional fee by said attorneys, to become due and payable as soon as titles are adjudicated and settled, and when said lands have been converted into cash; said additional fee to be in addition to the cash fee already recited. It is further agreed hereby that in the event the valuation of said lands can not be agreed upon by said attorneys and C. M. Council, when the same shall have been so recovered and title thereto settled, then the value of the same is to be arrived at by the said C. M. Council fixing a value and agreeing to a 'give-or-take proposition' to said attorneys."

Mrs. Hawkins, the former owner of the "Hawkins title," had

conveyed the same to the Suwanee Land & Lumber Company, receiving part payment of the purchase-price in cash, and a mortgage on the land to secure the balance of the purchase-money. The lumber company, having commenced marketing the timber, was enjoined by rival claimants, and thereupon sought, by a bill in equity, to cancel and rescind its contract with Mrs. Hawkins. A settlement was agreed on by the terms of which the lumber company lost the amount of money it had paid on the purchase-price, and its entire capital stock was to be the property of Mrs. Hawkins, to be in turn transferred by her to the defendant Council. After long and laborious examination of the titles and the expenditure of a great amount of labor, both in connection with the pending litigation and otherwise, Hixon and Shipp & Sheppard united in advising Council that he could not hope to hold "much the greater part" of the timber under the Hawkins title. Acting upon this advice, Council effected a final settlement with Mrs. Hawkins, and with Shipp & Sheppard for their professional services, and employed the plaintiff to find and purchase the true and genuine title to the lands in question, and to do so under the terms of the written contract with the attorneys hereinbefore referred to, by the terms of which the plaintiff and Shipp & Sheppard were each to receive five per cent. of the value of the land acquired and accepted by the defendant. The defendant agreed that in view of Shipp & Sheppard's elimination from the contract, and the additional labor and responsibility which would devolve upon the plaintiff, he would pay the plaintiff satisfactory compensation in addition to the five per cent. agreed on. Soon thereafter it was found by the defendant that it would be expedient, in acquiring title to the Hawkins timber, to acquire other timber, adjacent thereto, and it was thereupon agreed that the written contract, as to the plaintiff's compensation, and all subsequent agreements in reference thereto, should apply to such adjacent property "the same as the Hawkins lands." Plaintiff alleges, that under the original contract he was to receive five per cent. of the value of the land and timber when satisfactory titles were acquired; that by subsequent agreements he was to receive reasonable additional compensation, because he was no longer to have the assistance of Shipp & Sheppard, and that this contract, as thus modified, was to apply to other lands and timber acquired for the defendant, as well as to the Hawkins lands. Plaintiff proceeded

with the work under the contract, devoting practically the whole of his time for nearly two years, up to April, 1909, when the defendant requested him to discontinue his services under the contract, and proposed that in the future the parties should agree in each instance upon compensation for services rendered. To this the plaintiff consented. At this time he had already acquired for the defendant the true and genuine title to 41,830 acres of land and saw-timber. After acquiring this timber he procured for the defendant a charter for a company organized to cut and market the timber. The value of the timber thus acquired by the defendant was $344,440; and five per cent. of this sum, or $16,722, represents the amount the plaintiff was to receive for his services, and the plaintiff claims interest thereon from October 22, 1909. In addition to this sum he sues for $656.82, besides interest, for per diem and expenses incurred in accordance with the contract. The parties being unable to agree on a valuation for the lands, the plaintiff requested the defendant to make a "give-or-take proposition," as provided by the contract, but the defendant refuses to do so, and likewise refuses to convert the property into cash, and is cutting and marketing the timber as rapidly as possible. Plaintiff does not claim extra compensation by reason of the elimination of Shipp & Sheppard from the contract, but claims only five per cent. of the value of the timber and lands, title to which he acquired for the defendant, and his per diem and expense account. Of the 41,830 acres acquired, about half consists of the original Hawkins land, and the balance consists of lands adjacent thereto.

A demurrer to the petition was overruled, and the defendant excepted pendente lite. The defendant answered, admitting the execution of the original contract, but claimed that at the time of the settlement with Shipp & Sheppard, he settled also with Hixon; that the contract was thereupon cancelled; that he made no agreement to pay the plaintiff on a percentage basis for future services, but agreed only to pay the reasonable value thereof. Defendant admitted an indebtedness of $500.41 as expenses incurred, and tendered to the plaintiff $2,500 in full settlement of all his demands. On February 2, 1910, the case was referred to an auditor. The time for filing the auditor's report was extended from term to term until October 30, 1911, when, by consent of counsel for both sides, the court passed an order extending to twenty days prior to

the next term of the court, and providing that in default thereof the cause be withdrawn from the consideration of the auditor.  On January 6, 1912, in pursuance of a practice prevailing in the city court of Americus, court was convened for the purpose of assigning cases for trial.  When the present case was called for assignment, attention was called to the fact that the auditor's report had not been filed.  The auditor was present and stated that he was then ready to file his report, and that he had not been before advised of the terms of the consent order of October 30, 1911.  Counsel for defendant insisted that the report be filed, and counsel for the plaintiff contended that it was too late to file the report, and insisted that the case be regularly assigned for trial during the January term, which convened on January 23.  Thereupon the court assigned the case for trial on January 24, without prejudice to the right of either party to object to or insist upon the auditor's report.  Subsequently the auditor filed a sealed report, together with a supplemental report, reciting the fact and cause of the delay, and asking for direction by the court as to whether the report should be filed and considered.  On January 24 the case was called and the plaintiff moved to disregard the auditor's report and proceed with the trial.  On the hearing of this motion the foregoing facts appeared, and it was further shown that the delay of the auditor was due to the failure of the official stenographer to write out the evidence, and that the delay in procuring the evidence was due partly to the fact that the plaintiff's counsel notified the stenographer not to transcribe his notes; but this notice was given prior to January, 1911, at which time an order extending the time was granted at the defendant's instance.  It further appeared that counsel for the defendant consented to the order of October 30, 1911, because there was no qualified judge present to pass an order; that court was about to adjourn, and counsel were obliged to accept the conditional order of October 30, or no order at all could have been passed.

The case went to trial, and the jury returned a verdict in favor of the plaintiff for $7,550.41, besides interest thereon from September 9, 1909.  Defendant's motion for a new trial having been overruled, he excepted, assigning error upon the overruling of his demurrer, upon the sustaining of the motion to disregard the auditor's report, and upon the judgment overruling the motion for a new trial.

1. The demurrer challenged the right of plaintiff to recover at all, and also set up that the cause of action, if one existed, was set forth in terms too vague, general, and indefinite. Counsel do not treat this demurrer seriously, since the only reference to it in their briefs in the way of argument is as follows: "The court erred in overruling and in not sustaining the demurrer of the defendant, and in not dismissing the plaintiff's suit." Perhaps we ought to treat the demurrer as having been abandoned. At any rate, we will do no more than follow the precedent set by counsel, and content ourselves with saying that the demurrer was without merit.

2. It is contended that the court erred in withdrawing the case from the auditor. In the original order appointing an auditor no provision was made as to the time within which the report should be made. On February 9, 1911, an order was passed extending the time for filing the report and directing the auditor to make report "as soon as practicable." The next order was that of October 30, peremptorily directing the auditor to make report twenty days prior to the January term, 1912, and providing that in default thereof the case be withdrawn from his consideration. It is now contended that as the auditor was appointed upon motion of the plaintiff, he could not assume the position that the case was one which should be tried by a jury; and the principle is invoked that where one party successfully assumes a certain position in a legal proceeding, he can not thereafter assume, as to the same subject-matter and against the same adversary, a contrary position. *Bedingfield* v. *Bates,* 2 *Ga. App.* 111 (58 S. E. 320); *Haber-Blum-Bloch Hat Co.* v. *Friesleben,* 5 *Ga. App.* 123 (62 S. E. 712); *Central Ry. Co.* v. *Waldo,* 9 *Ga. App.* 182 (70 S. E. 1021). It is also insisted that a judgment entered at one term, even though erroneous, can not be vacated at a subsequent term. *Lanier* v. *Byrd,* 115 *Ga.* 198 (41 S. E. 683).

Both of these contentions of counsel are abstractly correct, but they have no application in the present case. Unquestionably the original order appointing the auditor was the judgment of a court of competent jurisdiction and binding as such. If this order had limited the time within which the report should be filed, after the expiration of this time the auditor would have had no jurisdiction over the case. *Peavy* v. *McDonald,* 119 *Ga.* 865 (47 S. E. 203). The appointment of the auditor did not have the effect of depriving

the court of all jurisdiction over the case, and we know of no reason why the court could not, during a term, upon a showing that the filing of the report had been unreasonably delayed, pass a peremptory order directing the filing of the report by a specified date. This seems to have been done in *Peavy* v. *McDonald,* supra, where it was held that the report must be filed within the time limited by the original or any subsequent order. And so, where the order of appointment directs that the report be filed by the next term, we know of no reason why upon the first day of the term a showing might not be made and the time extended to a later date. Such has been the uniform practice. Whether the court could, at a subsequent term, over the objection of one of the parties, revoke the appointment of the auditor, we do not say. Where the auditor fails to act, the court may, at a subsequent term, change the reference and appoint another auditor. *Cook* v. *Commissioners of Houston County,* 62 *Ga.* 223. Since an auditor is primarily appointed to assist the court in arriving at the truth of the matters in issue, and is appointed in the exercise of a sound discretion, it would seem that where the auditor fails for several terms to make report, the court could, ex mero motu, withdraw the reference, and proceed with the trial before a jury. But, be this as it may, here both parties consented to the passage of an order limiting the time within which the report must be made, and both are bound by the terms of the order; which, however, in our opinion, the court had power to pass without such consent. The fact that the auditor did not know of the time limitation makes no difference. The law charges him with knowledge, and counsel ought to have informed him. Defendant's counsel claim that they were compelled to consent to the order of October 30, because no qualified judge was present and court was about to adjourn. The order was passed by a judge pro hac vice, and counsel could just as well have objected before him to the time limitation as before a regular judge. It is quite possible that if the order of October 30 had not been passed, the court could, upon the showing made, have permitted the report to be filed, but, in view of the terms of that order, under the decision in *Peavy* v. *McDonald,* supra, the auditor had lost jurisdiction when his report was filed, and the court rightly disregarded it and ruled the case to trial.

3.   The original contract between the defendant on the one side

and Hixon and Shipp & Sheppard on the other evidently contemplated the performance of professional services as a result of which the Hawkins title should be "adjudicated" or "settled," so as to vest the ownership under that title in the Suwanee Land & Lumber Company or Council, and the agreed fee was not to become due until the title was "adjudicated and settled." It is true that the contract provides that Hixon's fee was to be due as soon as the title was "adjudicated into the Suwanee Land & Lumber Company, whether litigated or not." The word "adjudication" necessarily carries with it the idea of a vesting of the title by a judgment or decision of some competent tribunal. The language employed is certainly not susceptible of the construction that the attorneys were to have ten per cent. of the value of the timber for mere abstract work and an expression of opinion that the title was valid. What the parties probably meant was that some proceeding must be taken to remove clouds or quiet title, and the like, so as to adjudicate and settle the title, and that when such an adjudication was had, the attorneys would be entitled to their agreed fee, whether the proceedings were resisted or not. The word "litigated" was probably used in the sense of resisted. The plaintiff having sued upon an express contract and not having declared upon a quantum valebat, the only question involved was whether he proved his case as laid. The trial judge submitted to the jury as one of the issues in the case the question of the reasonable value of the plaintiff's services. This was erroneous, but as no exception has been taken to this instruction, and as it is impossible to ascertain from the verdict whether it is based upon an express contract as set forth in the petition, or upon an implied contract to pay for the services rendered, the only question presented by the record upon this branch of the case is whether the evidence warranted the verdict under the plaintiff's theory of the case.

The plaintiff does testify that the original contract was "enlarged," so as to embrace lands other than those referred to in the contract; but taking his testimony altogether, the jury were authorized to find that the defendant agreed to pay five per cent of the value of any timber, title to which was acquired as a result of the services of the plaintiff and accepted by the defendant. Under the plaintiff's testimony, he rendered the services which he engaged to perform, and the amount of compensation which the defendant

agreed to pay was five per cent. of the value of the timber acquired through the plaintiff's efforts and accepted by the defendant. The verdict was for a sum greatly less than five per cent. of the value as shown by the testimony for the plaintiff, and for less than he claims the defendant offered to pay him and admitted to be due before the suit. The amount of the verdict is based more nearly upon the value of the timber as fixed by the testimony of the defendant. Taking the evidence altogether, we are not prepared to say that the plaintiff has not proved his case as laid in his petition.

The court charged the jury, in substance, that if they should find that the original contract was never abrogated, but that the services rendered by the plaintiff were in pursuance of an enlargement and extension of that contract, he would be entitled to recover five per cent. of the value of the property acquired by the defendant as a result of plaintiff's services. As we have seen, this charge was based upon misconstruction of the contract. But the error thus committed was not of sufficient materiality to require a reversal. Plaintiff testified in substance that the defendant agreed to pay him five per cent. of the value of the timber on the land, title to which was acquired by the defendant. If the jury believed this to be true, it was immaterial whether the five per cent. clause in the original contract was continued in force or not; and the instruction that, before the plaintiff could recover, the jury must believe that the original contract was continued in force in all of its terms, and enlarged so as to include additional lands, really operated more against the plaintiff than in his favor. The main and controlling question in the case was whether or not the plaintiff rendered the services which he claimed to have performed, and whether or not the defendant agreed to pay for these services the sum contended for by the plaintiff. Both of these issues having been settled in favor of the plaintiff, we do not think the error in the charge above referred to is of sufficient materiality to demand a new trial.

4. This brings us to the only remaining question in the case, viz., whether the plaintiff was entitled to interest. The parties having been unable to agree upon the value of the timber, the plaintiff called upon the defendant to fix the value under a "give-or-take proposition," as provided for in the contract. The defendant refused, and the interest was allowed by the jury from the date of this demand and refusal. "All liquidated demands, where by

agreement or otherwise the sum to be paid is fixed or certain, bear interest from the time the party is liable and bound to pay them." Civil Code (1910), § 3434. "A debt or demand is liquidated when agreed on by the parties, or fixed as to the amount by the operation of law." *Hargroves* v. *Cooke,* 15 *Ga.* 321 (12). "An unliquidated claim is one which one of the parties to the contract can not alone render certain." *Roberts* v. *Prior,* 20 *Ga.* 561. " 'Liquidated' is that which is made clear, certain, manifest; as, liquidated damages, ascertained damages; liquidated debt, an ascertained debt, as to amount. A debt is liquidated when it is certain what is due and how much is due: Cum certum est an et quantum debeatur. For although it may appear that something is due, if it does not also appear how much is due, the debt is not liquidated." Id. 562. "A debt is liquidated when it is rendered certain what is due and how much is due. That certainty need not be contemporaneous with the agreement out of which it results." *Bartee* v. *Andrews,* 18 *Ga.* 407. In that case the plaintiff sued for one fifth of a crop, which the defendant had contracted to pay him for his services and had converted to his own use. The court held that the plaintiff was entitled to interest, and said (p. 410) : "Now the agreement in this case was that one fifth part of the crop was to be paid to the defendant, when it was made. This was a measure of the amount which the defendant was to receive. When did that amount become certain? Just when the defendant received and took possession of the crop, or of its proceeds; he had knowledge of the amount, and he knew that to one fifth thereof he was indebted to the plaintiff; and thus it became certain to him what was due. It needed no further settlement or adjustment of accounts between them, in order that he might ascertain what was due. And if the same were due, and he continued to use it for his own benefit, no good reason can be given why interest should not be paid thereon, for such use. And therefore we affirm the judgment of the court on this ground." Interest will be allowed on money due where the debtor was able to determine the amount, although the creditor may have claimed a greater sum than was actually due. Spalding v. Mason, 161 U. S. 374 (40 L. ed. 739 (5)). A claim resting entirely in parol may be a liquidated demand. *Anderson* v. *State,* 2 *Ga.* 370. An open account becomes liquidated when assented to by the debtor. *Kelley* v. *Terhune,* 113 *Ga.* 365 (38 S. E. 839). "We understand by liqui-

dation an amount certain and fixed, either by act and agreement of the parties, or by operation of law; a sum which can not be changed by the proof; it is so much or nothing; and that the term does not necessarily refer to a writing." *Nisbet* v. *Lawson,* 1 *Ga.* 287. The word "liquidated," as used in the statute referring to the division of claims so as to bring them within the jurisdiction of a justice's court, means "settled, acknowledged, or agreed." *Parris* v. *Hightower,* 76 *Ga.* 631.

By the act of 1800 (Civil Code, § 4270) it was provided that a note payable in specifics should bear interest. In *Bartee* v. *Andrews,* supra, the statutory rule was applied to an agreement to pay a fifth of a crop for services. The present case does not differ materially. The parol agreement as testified to by the plaintiff was that he was to receive five per cent. of the value of the timber on a specified number of acres of land. While value is a matter of opinion, and men differ as to the value of a given article or commodity, still it has but one value. There is a sum certain which represents the value, whatever may be the method employed for arriving at it. It may be left to the opinion of one man, or to arbitrators, or to the agreement of the parties interested themselves; but when ascertained, the sum represents, in legal contemplation, the value of the article, which has been all the while the sum thus ascertained. So that if one promises to pay the value of an article, that is a sum certain, and it is immaterial how that value may be ascertained. Here the defendant's promise was in effect an agreement to pay one twentieth of the value of the timber, and though the parties may have differed as to the value and submitted the question to a jury, or to arbitration, the sum thus ascertained was the amount which, in legal contemplation, the parties knew to be the value, and which they could have found for themselves had they honestly pursued the right method. The fact that the contract recognized that the parties might not by agreement be able to arrive at a sum certain, and provided a method for fixing the amount in case of disagreement, makes the sum none the less certain in legal contemplation. If the sum due had been so ascertained, then it would have represented a sum certain which had previously been agreed on, and would have borne interest from the date the amount became due and payable. The jury were called upon, not to name an arbitrary amount, but to say what sum the parties themselves

had agreed on. By their verdict they said: "This is the amount the defendant agreed to pay and the plaintiff agreed to accept." While the verdict may appear to be for an arbitrary amount, in legal contemplation it represents the sum which one party agreed to pay and the other to take. It can not be said that the verdict was necessarily based upon a quantum valebat; for, while the jury apparently did not accept the testimony of any witness as to the value, they were not bound to do so, but could express their own opinion as to value from the proved data in the case. *Martin* v. *Martin,* 135 *Ga.* 162 (68 S. E. 1095), and citations. The plaintiff was entitled to interest at least from the date fixed by the jury.

The foregoing decision deals with all of the assignments of error insisted upon in the briefs of counsel for plaintiff in error, none of which are, in our opinion, well taken.    *Judgment affirmed.*