A89A1219. RUFF v. CENTRAL STATE HOSPITAL.
(385 SE2d 734)

BANKE, Presiding Judge.

The appellant brings this appeal from an order directing his continued hospitalization for involuntary treatment as a mentally ill person for a period not to exceed six months, pursuant to OCGA § 37-3-81.1 (c).

It appears both from the record and from the briefs of the parties that the appellant does not dispute that he is a "mentally ill person requiring involuntary treatment" within the contemplation of OCGA §§ 37-3-81.1 and 37-3-1 (11). The dispute is over whether he is subject to involuntary treatment as an "inpatient" pursuant to OCGA §§ 37-3-81.1 and 37-3-1 (9.1), or whether he should be treated as an "outpatient" pursuant to OCGA §§ 37-3-81.1 (3) (A) and 37-3-81.1 (12.1).

The appellant was diagnosed by his attending psychiatrist as a chronic paranoid schizophrenic with acute exacerbation, meaning that "he was functioning outside [the hospital], but relapsed." It was shown that he had been hospitalized five times since 1983. After the first three hospitalizations, he had returned to his mother's home to live; however, his mother is no longer willing for him to live with her. Following his fourth hospitalization, he was placed in a "supportive

living" facility operated by or in conjunction with the state mental health system. He remained there for approximately a year, until he expressed a continued lack of willingness to continue taking the medication which had been prescribed to control the symptoms of his mental illness, which include visual and auditory hallucinations. His present hospitalization commenced with his voluntary admission to Central State Hospital on August 2, 1988. On August 11, 1988, he withdrew his consent to such hospitalization by signing a request for discharge. Central State thereupon instituted the present commitment proceeding against him in the Probate Court of Baldwin County. By order entered on August 31, 1988, the probate court found the appellant "met the criteria of OCGA § 37-3-81.1 requiring involuntary inpatient treatment for a period not to exceed (six (6) months) . . . from the date of this order, subject to the power of the chief medical officer to discharge the patient at any time under the power of OCGA § 37-3-85 (b)." The appellant thereupon filed an appeal to the superior court, which, following a de novo hearing, issued a final order on December 12, 1988, essentially adopting the conclusions of the probate court. This appeal followed. *Held*:

1. The appellant contends that the trial court's findings of fact are inadequate in that they do not identify the specific evidence upon which the court relied in reaching its conclusions of law. However, this objection was waived by the appellant's failure to raise it in the trial court in accordance with OCGA § 9-11-52 (c), which provides, in pertinent part, as follows: "When findings or conclusions are not made prior to judgment to the extent necessary for review, failure of the losing party to move therefor after judgment shall constitute a waiver of any ground of appeal which requires consideration thereof."

2. The purpose of the commitment proceeding was to determine "whether the patient is a mentally ill person requiring involuntary treatment and, if so, whether the patient is an inpatient or an outpatient and . . . the type of involuntary treatment the patient should be ordered to obtain." OCGA § 37-3-81.1 (a). As previously indicated, the appellant does not dispute that he is a "mentally ill person requiring involuntary treatment." See generally OCGA § 37-3-1 (11,12). He does contend, however, that there was not clear and convincing evidence to support the trial court's conclusion that he met the criteria for involuntary treatment as an "inpatient."

The term "inpatient" is defined by OCGA § 37-3-1 (9.1) as follows: " 'Inpatient' means a person who is mentally ill and: (A) (i) Who presents a substantial risk of imminent harm to that person or others, as manifested by either recent overt acts or recent expressed threats of violence which present a probability of physical injury to that person or other persons; or (ii) Who is so unable to care for that person's own physical health and safety as to create an imminently life-endan-

gering crisis; and (B) Who is in need of involuntary inpatient treatment."

Although both the probate court and the superior court expressly concluded that the appellant presented "a substantial risk of imminent harm to himself or others as manifested by recent overt acts or recent expressed threats of violence which presented a probability of physical injury to himself or to other persons," we must agree with the appellant that there was no evidence to support such a finding. However, we conclude there was clear and convincing evidence to support the court's additional conclusion that the appellant was "so unable to care for his own physical health and safety as to create an imminently life-endangering crisis" in the event he were discharged.

The appellant's attending psychiatrist, Dr. Alverez, indicated that his primary concern about releasing the appellant was that he tended not to take his medication on a regular basis "when he's outside." Dr. Alverez stated that when the appellant failed to take his medication, "all the basic symptoms of schizophrenia [would] flare up again." Also, he expressed the opinion that the appellant would not currently be able to function in a less restrictive environment than a hospital but "because of the illness [would always] need somebody to look after him . . ., somebody who would be able to give the medication that he needed, somebody who can check on him."

There was no suggestion during the hearing that the appellant had any expectation of being able to earn a living upon his release; and although there was some evidence that he would be eligible for public disability benefits based on his lack of financial resources and inability to work, the testimony on this issue was to the effect that such benefits could not be expected to commence for at least three months following his release. Testifying on his own behalf at the hearing, the appellant made such statements as, "I don't have any place to go or any place to live," and, "[T]here isn't anywhere I can go because I don't have any money." He further testified that he did not want to return to a "supportive living" facility, stating, "I would rather stay in the hospital than go to supportive living." In addition, he confirmed Dr. Alverez's misgivings about whether he would take his prescribed medication if he were discharged, stating "I don't think I really need the medication." Based on our review of the transcript, we hold that there was "clear and convincing evidence," see OCGA § 37-3-1 (8), to support the trial court's determination that if the appellant were discharged from the hospital, he would be so unable to care for his own physical health and safety as to create an imminently life-endangering crisis. We accordingly hold that the trial court did not err in denying the appellant's motion for involuntary dismissal of the action pursuant to OCGA § 9-11-41 (b), nor in authorizing his continued involuntary treatment as an inpatient pursuant to OCGA § 37-3-

81.1 (c).

*Judgment affirmed. Sognier and Pope, JJ., concur.*

DECIDED JULY 14, 1989 —
REHEARING DENIED JULY 31, 1989 —

*Torin D. Togut, Phyllis J. Holmen, John L. Cromartie, Jr.,* for appellant.

*Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General, B. Patricia Downing, Assistant Attorneys General, J. Edward Hall,* for appellee.