A06A1554. M. HOMES, LLC v. SOUTHERN STRUCTURAL, INC.
(636 SE2d 99)

BARNES, Judge.

Southern Structural, Inc. filed an application to stay an arbitration proceeding demanded by M. Homes, LLC, and the trial court granted the motion without explanation. M. Homes appeals, contending that the trial court erred in staying the arbitration because it was the assignee of Majestic Residential, LLC ("the Assignor"), the original party to the construction contract with Southern Structural, and therefore, was entitled to arbitrate its construction defects claims against the company. For the reasons that follow, we affirm.

This court reviews a grant of a motion to stay arbitration de novo to determine whether the trial court was correct as a matter of law. *Holt & Holt, Inc. v. Choate Constr. Co.*, 271 Ga. App. 292 (609 SE2d 103) (2005).

This case has a twist, because Southern Structural argues, and the trial court apparently agreed, that M. Homes' assignor waived the right to arbitration under the contracts at issue by its actions in a related case. M. Homes contends that it did not know about the contracts' right to arbitration until Southern Structural responded to its discovery in that related case and produced copies of the contracts. It asserts that, once it learned that the contracts contained arbitration clauses, it took no actions inconsistent with waiver and sought arbitration within a very short time.

The record confirms that the trial court's order on appeal in this case was entered in conjunction with the related case, and thus we will consider the proceedings in that case so far as they are reflected

in the record. In that case, on December 3, 2004, Southern Structural sued the Assignor, the original party to the construction contracts, for breach of contract and other counts, alleging that it owed Southern Structural $582,485 for construction materials it had delivered to and installed in the Assignor's houses. Southern Structural also sued the Assignor's members — Killearn, Inc., Drayton Baker, and Hank Burney — as well as other business entities and individuals it claims were involved to some degree in the operations of the Assignor and Killearn, Inc.

The Assignor answered the complaint on January 19, 2005, admitting that its members were Killearn, Inc., Baker, and Burney, that it had an agreement with Southern Structural, and that it owed Southern Structural some money. It also raised several affirmative defenses, including waiver, estoppel, and failure of consideration. The Assignor responded to Southern Structural's requests for production and interrogatories on February 1, 2005, contending that it owed Southern Structural $447,323.14, and noting that the Assignor was out of business by then.

Meanwhile, the Assignor's members fully participated in defending the suit. While the answers of members Baker and Burney are not included in the record before us, Baker's December 15, 2004 interrogatories and requests for production to Southern Structural are included for our review. Further, on January 6, 2005, Killearn, Inc. answered, admitting it was formerly a member of the Assignor but denying it was a party to any agreement with Southern Structural. Four business entities and four individuals related to Killearn, Inc. joined its answer but denied that they were affiliated with the Assignor in any way. Along with their answer, all of the Killearn defendants moved to dismiss the complaint on the grounds that venue was improper and the complaint failed to state a claim for relief.

On March 1, 2005, all of the Killearn defendants moved to set aside a temporary restraining order, which apparently had been entered to halt foreclosure of the Assignor properties, and submitted the affidavit of defendant David K. Williams, vice president of Killearn, Inc. and president of Killearn Properties, Inc. of GA (KPI). In the affidavit, Williams explained that in November 2004, Killearn saw that the Assignor would not be able to pay its creditors and set up a new entity to finish construction on the houses, sell the properties, and pay the creditors pro rata. All of the creditors except Southern Structural agreed to the plan and received an advance of 20 percent of the amount due them.

Williams also said he and Killearn, Inc. were guarantors of the Assignor's debts to two banks. The banks called the guarantees in early January and then sold the notes and assigned their interest in

the properties to KPI, which paid off the notes in full. KPI planned to foreclose on the properties, complete the construction, and sell the properties to recoup money for the Assignor's creditors. The partially completed houses were open to the elements and some had been vandalized, so further delay in construction and foreclosure would allow them to deteriorate further, and thus, Williams explained, the temporary restraining order should be lifted. Attached to Williams' affidavit is a copy of a November 23, 2004 letter of intent between Killearn, Inc. and the Assignor setting out the terms of their agreement for Killearn to complete and sell the properties and repay the Assignor's debtors.

Finally, on July 1, 2005, Killearn, Inc. sent a letter to Southern Structural indicating that its expert had inspected the properties for which Southern Structural provided framing and identified numerous problems, and also inviting the company to inspect the properties. On July 12, 2005, the trial court signed a consent order extending the discovery period to October 2005, agreed to by the Assignor and all of the other parties.

On July 29, 2005, Killearn, Inc. sent Southern Structural a demand for arbitration. Killearn stated that it "and its affiliate, M. Homes" had retained the expert who had identified defects in the properties, that the contract "produced by [Southern Structural] for the subject properties contains an arbitration provision," and that the existence of the defects changed the case from a collections matter to a dispute subject to the arbitration clause in the contract. Killearn filed a motion to compel arbitration on August 17, 2005.

On August 30, 2005, the Assignor assigned to M. Homes its interest in

> all of Assignor's right, title, interest, in any and to the extent assignable, in and to any warranties and guaranties, express or implied, heretofore given to Assignor in the [Southern Structural] Contracts with respect to the materials and/or construction of the residential homes on the Real Estate or any fixtures, personalty or other improvements located on or within the Real Estate or in any way pertaining to the Real Estate.

On September 12, 2005, M. Homes filed a demand for arbitration with Southern Structural, contending that the framing on 15 houses was defective, and seeking the costs to cure the defects. These properties were among those involved in the related litigation. Southern Structural filed its application to stay the arbitration on October 5, 2005, contending that M. Homes was not a party to the contract between Southern Structural and the Assignor; that M. Homes

bought the properties from the Assignor at foreclosure in early 2005 and failed to inspect them then; that the underlying basis for the claims was a collections matter not subject to arbitration; and that M. Homes waived its right to arbitrate the claims, as the defendants and assignors did in the related case. In the related case, Southern Structural responded to the Assignor's and Killearn's motion to compel arbitration on September 19, 2005, and on October 25, 2005, the trial court heard argument on both the application to stay in this case and the motion to compel arbitration in the related case. On January 26, 2006, it granted Southern Structural's motion to stay in this case and denied the Assignor's motion to compel arbitration in the related case.

M. Homes argues on appeal that the trial court erred in granting Southern Structural's application to stay the arbitration because, as the assignee of the original party to the construction contract with Southern Structural, it was entitled to arbitrate its construction defects claims against the company. M. Homes also argues that the trial court erred in granting the application to stay the arbitration because Southern Structural failed to establish any of the three grounds required by OCGA § 9-9-6 (b), which are (1) that the parties did not have a valid agreement to submit to arbitration, (2) that the parties did not comply with the agreement to arbitrate, or (3) that the arbitration is time-barred.

We have also held, however, that a party may waive an agreement to arbitrate by taking actions that are "inconsistent with the right of arbitration." *Burnham v. Cooney*, 265 Ga. App. 246, 247 (1) (593 SE2d 701) (2004). For example, we have held that a party who asserted a counterclaim and affirmative defenses, participated in discovery, and consented to an order extending discovery waived its right to arbitration by failing to assert it until after the extended discovery period ended. *Phil Wooden Homes v. Ladwig*, 262 Ga. App. 792, 793 (586 SE2d 697) (2003); *Griffis v. Branch Banking & Trust Co.*, 268 Ga. App. 588, 590-591 (2) (602 SE2d 307) (2004). Even a party who asserted a right to arbitration in its answer may waive that right by conducting discovery, moving for summary judgment, and entering a consolidated pre-trial order. *Wise v. Tidal Constr. Co.*, 261 Ga. App. 670 (583 SE2d 466) (2003).

The record shows that the Assignor assigned its rights in these contracts to M. Homes on August 30, 2005, the same day M. Homes demanded arbitration with Southern Structural. M. Homes argues that it did not know about the arbitration clauses in the contracts until Southern Structural responded to the Assignor discovery requests in July 2005. On the one hand, M. Homes contends it did not waive its right to arbitrate because it did not know the right existed until Southern Structural gave it copies of the contracts, and on the

other hand, it argues that it stands in the Assignor's place as its assignee. M. Homes cannot have it both ways. It is a well-established principle of Georgia law that an assignee of a contract acquires its rights from the assignor, has no more rights under the contract than the assignor, and is subject to all the defenses that could have been raised against the assignor. *Pridgen v. Auto-Owners Ins. Co.*, 204 Ga. App. 322, 323 (419 SE2d 99) (1992). The Assignor was a party to the contracts which formed the entire basis for Southern Structural's lawsuit, and as the assignee, all of the Assignor's actions during this litigation are imputed to M. Homes. Even apart from the actions of the Assignor's members in the related case, the Assignor itself failed to raise the defense of arbitration in its answer, participated in discovery, and agreed to extend the discovery period, all without raising the issue of arbitration. The Assignor's president knew by at least January 2005 that the houses were incomplete and open to the elements, and, as Killearn, Inc.'s "affiliate," the Assignor even hired an expert to inspect the properties and identify any defects before July 1, 2005.

Further, the Assignor "as a party to the contract it signed, is presumed to know" the terms of the contract. *Holt & Holt, Inc. v. Choate Constr. Co.*, supra, 271 Ga. App. at 294. Therefore, as the assignee, M. Homes is also presumed to know the terms of the contract, and thus its contention that it had no notice of its contractual right to arbitrate this claim until eight months into the litigation is without merit. As outlined above, the Assignor and its members fully participated in the litigation process without demanding arbitration from the suit's inception in December 2004 until July 2005. Accordingly, we conclude that the trial court did not err in granting Southern Structural's application to stay arbitration.

*Judgment affirmed. Andrews, P. J., and Bernes, J., concur.*

DECIDED AUGUST 30, 2006.

*Chamberlain, Hrdlicka, White, Williams & Martin, Gary S. Freed, Deborah S. Cameron*, for appellant.

*Cooper, Jones & Cooper, Lance A. Cooper, Patrick A. Dawson*, for appellee.