A07A2475. HAMPSHIRE HOMES, INC. v. ESPINOSA
CONSTRUCTION SERVICES, INC. et al.
(655 SE2d 316)

BLACKBURN, Presiding Judge.

Following a bench trial in this action to collect on past due commercial accounts, Hampshire Homes, Inc. appeals a final judgment in favor of Espinosa Construction Services, Inc. for $10,931.48 plus $12,097.70 in pre-judgment interest (plus attorney fees), and in favor of Espinosa Concrete Walls for $20,757.91 plus $18,628.31 in

---

pre-judgment interest (plus attorney fees), which principal represented the amounts remaining unpaid on the Espinosa companies' concrete invoices to Hampshire Homes (less a credit to Hampshire Homes on the Espinosa Construction account of $3,000 to pay for the rental of a piece of equipment). Hampshire Homes contests the absence of additional findings of fact on its defense of accord and satisfaction, the award of pre-judgment interest on the past due amounts, the award of attorney fees, and the refusal of the trial court to treat a lien waiver as a waiver of the underlying debt. Discerning no error, we affirm.

On appeal from a bench trial, we construe the evidence in favor of the judgment and will not disturb fact findings of a trial court if there is any evidence to sustain them. *Sam's Wholesale Club v. Riley.*[1] So construed, the evidence shows that pursuant to a pricing list agreed to by Hampshire Homes, Espinosa Construction and Espinosa Concrete separately provided material and labor to construct concrete pads and walls for some homes being constructed by Hampshire Homes. The Espinosa companies sent invoices to Hampshire Homes, who for the most part paid the invoices without problem. However, with regard to some of the later houses, Hampshire Homes (without explanation) paid less than the full amount of the invoices or failed to pay anything at all. Neither Espinosa company agreed to the reduced payments and both demanded full payment on all invoices, but to no avail.

Each Espinosa company filed a suit to recover the amounts remaining due on its particular accounts, which suits were consolidated by consent. Both complaints set forth the exact amounts remaining unpaid under the invoices and prayed not only for those amounts but also for 18 percent annual pre-judgment interest under OCGA § 7-4-16 as well as attorney fees under both OCGA §§ 13-6-11 and 13-11-8. At trial, Hampshire Homes argued accord and satisfaction, claiming that it had marked up several invoices to indicate its disagreement with some of the charges as unnecessary and that therefore Espinosa's cashing of the tendered reduced amount checks showed its agreement with the discounted amount. Hampshire Homes's representative conceded that the quantity of labor and materials reflected in the invoices was accurate, that the pricing in the invoices comported with the agreed-upon pricing list, and that Espinosa representatives often vocally disagreed with the discounts. Hampshire Homes simply felt that the aggregate amount owed on the concrete work on some of the houses ended up being too expensive and that therefore the Espinosa companies must have provided more

---

[1] *Sam's Wholesale Club v. Riley*, 241 Ga. App. 693, 693 (527 SE2d 293) (1999).

material and labor than was necessary. Furthermore, Hampshire Homes counterclaimed that Espinosa Construction had agreed to pay rental on a Hampshire Homes's piece of equipment used by Espinosa Construction; Espinosa Construction conceded this point at trial and showed that the rental rate of the equipment was $3,000 for the two months Espinosa Construction used the equipment.

In a 19-page decision, the trial court detailed numerous findings of fact and conclusions of law. The court found across the board that the unpaid invoices accurately reflected the agreed-upon work performed by the Espinosa companies at the Hampshire Homes's houses; accordingly, the court entered judgment in the exact amounts prayed for by each Espinosa company, with an offset of $3,000 against Espinosa Construction's award to account for the equipment rental. Citing OCGA § 7-4-16, the court further found that the accounts at issue were commercial accounts involving liquidated claims; therefore, the court awarded the Espinosa companies pre-judgment interest at the rate of 18 percent per annum on the unpaid amounts (which rate of interest was also specified in the pricing list agreed upon by the parties). Finally, the court made several findings that supported the conclusion that Hampshire Homes had been stubbornly litigious and had caused the Espinosa companies unnecessary trouble and expense. Pursuant to OCGA §§ 13-6-11 and 13-11-8 of the Georgia Prompt Pay Act, the court awarded the Espinosa companies their attorney fees. Hampshire Homes appeals.

1. Hampshire Homes first argues that the trial court failed to set forth specific findings of fact and conclusions of law regarding its defense of accord and satisfaction. We hold that Hampshire Homes waived this argument.

OCGA § 9-11-52 (c) provides:

> Upon motion made not later than 20 days after entry of judgment, the court may make or amend its findings or make additional findings and may amend the judgment accordingly. . . . When findings or conclusions are not made prior to judgment to the extent necessary for review, failure of the losing party to move therefor after judgment shall constitute a waiver of any ground of appeal which requires consideration thereof.

Thus, an appellant who intends to argue that the trial court's findings are inadequate or incomplete waives that argument by failing to make the post-judgment motion referenced in OCGA § 9-11-52 (c).

*Ruff v. Central State Hosp.*[2] See *Jewell v. State of Ga.*[3] (failure to object post-judgment to sufficiency of the findings in the court's judgment waives that matter on appeal); *Doe v. Chambers*[4] (same). In such cases, we do not remand for additional findings but simply affirm. See *Beeks v. Consultech, Inc.*[5] See also *Safadi v. Thompson.*[6] Moreover, it appears to us that the trial court's findings were adequate in any case.

2. In its second and third enumerations, Hampshire Homes argues that the court erred in granting to the Espinosa companies pre-judgment interest under OCGA § 7-4-16. Specifically, Hampshire Homes contends that the trial court erred when it concluded that the Espinosa invoices were commercial accounts involving liquidated claims, and when it concluded that the Espinosa companies had given the notices requisite to recover interest under OCGA § 7-4-16. We discern no error.

(a) *The invoices were commercial accounts.* OCGA § 7-4-16 provides:

> Unless otherwise provided in writing signed by the obligor, a commercial account becomes due and payable upon the date a statement of the account is rendered to the obligor. The owner of a commercial account may charge interest on that portion of a commercial account which has been due and payable for 30 days or more at a rate not in excess of 1 1/2 percent per month calculated on the amount owed from the date upon which it became due and payable until paid. "Commercial account" means an obligation for the payment of money arising out of a transaction to sell or furnish, or the sale of, or furnishing of, goods or services other than a "retail installment transaction" as defined in paragraph (10) of subsection (a) of Code Section 10-1-2.

The trial court did not err in determining that the accounts sued upon by the Espinosa companies were commercial accounts. Those invoices represented obligations for the payment of money arising out of transactions to furnish labor and materials, none of which involved

---

[2] *Ruff v. Central State Hosp.*, 192 Ga. App. 631, 632 (1) (385 SE2d 734) (1989).

[3] *Jewell v. State of Ga.*, 200 Ga. App. 203, 204 (1) (407 SE2d 763) (1991).

[4] *Doe v. Chambers*, 188 Ga. App. 879, 881 (2) (374 SE2d 758) (1988).

[5] *Beeks v. Consultech, Inc.*, 222 Ga. App. 473, 474 (474 SE2d 675) (1996).

[6] *Safadi v. Thompson*, 226 Ga. App. 685, 686 (1) (487 SE2d 457) (1997) (physical precedent only).

a retail installment transaction. See *American Aluminum Products Co. v. Binswanger Glass Co.*[7]

(b) *The invoices represented liquidated claims.* Nor did the trial court err when it concluded that the invoices represented liquidated claims. "A debt or demand is liquidated when agreed on by the parties, or fixed as to the amount by the operation of law." (Punctuation omitted.) *Council v. Hixon.*[8] Here, the parties agreed to a pricing list, which Hampshire Homes conceded was followed in issuing the invoices; moreover, Hampshire Homes conceded that the quantities of labor and materials reflected in the invoices were accurate. See *Typo-Repro Svcs. v. Bishop*[9] (" '[a] debt is liquidated when it is certain *how much is due* and when it is due' ") (emphasis in original).

Hampshire Homes maintains, however, that since it claimed accord and satisfaction and further sought to reduce the invoices by contesting several line items as unnecessary, this rendered the accounts unliquidated and therefore not subject to the imposition of pre-judgment interest. *Buck Creek Indus. v. Crutchfield & Co.*[10] rejected this argument:

> Can a liquidated demand be converted into an unliquidated demand by one of the parties to the contract without the consent of the other? If so, an unsuccessful plea of failure of consideration or any other defense, although not sustainable, would absolve the defendant from payment of interest. This is not the intent of the law. An unliquidated claim is one which one of the parties to the contract or transaction cannot alone render certain. Here the amount is certain; one of the parties cannot by means of an *unsuccessful* defense render it uncertain. . . . A defendant is not entitled to set up a defense against payment, and, when it is established that the defense is invalid, still profit by being absolved from the payment of interest on money illegally retained by it. If this were true, for example, every action on a promissory note would involve a write-off of interest during litigation even though it was established that the defendant had no defense against the note.

---

[7] *American Aluminum Products Co. v. Binswanger Glass Co.*, 194 Ga. App. 703, 710 (391 SE2d 688) (1990).

[8] *Council v. Hixon*, 11 Ga. App. 818, 827 (4) (76 SE 603) (1912).

[9] *Typo-Repro Svcs. v. Bishop*, 188 Ga. App. 576, 579 (2) (373 SE2d 758) (1988).

[10] *Buck Creek Indus. v. Crutchfield & Co.*, 133 Ga. App. 80, 81-82 (1) (210 SE2d 32) (1974) (physical precedent only).

(Citation and punctuation omitted; emphasis in original.) See *United States ex rel. Ga. Elec. Supply Co. v. United States Fidelity & Guar. Co.*[11] ("[i]t is clear under Georgia law . . . that an amount claimed as due on an open account is considered liquidated even though the debtor or its surety claims deductions or setoffs").

Thus, we have repeatedly held that a commercial account at issue is liquidated (and therefore subject to pre-judgment interest) even though the defendant has unsuccessfully contested the amount due. See *Uniflex Corp. v. Saxon*[12] ("[t]he trial court did not err in awarding pre-judgment interest. Even though defendant contested some of the charges claimed by plaintiff, the jury obviously found the work was completed and payment was due"). See also *Wheat Enterprises v. Redi-Floors, Inc.*[13] (despite contrary evidence, "there was some evidence that the work performed by [plaintiff] was requested, assented to, and accepted by [defendant], making a claim under OCGA § 7-4-16 applicable. Such evidence also provides a basis to determine that the debt sued on was liquidated, as it was discussed and approved prior to being incurred"); *Haygood v. Smith*[14] (action brought on invoices for materials, labor and services; defendant's allegation that the invoices should be discounted to account for defects or other reasons did not change the fact that the submitted bill was a liquidated demand and subject to pre-judgment interest). Even though the ultimate amount awarded is less than that requested, or the amount is offset by a counterclaim amount, the debt is still considered liquidated and subject to pre-judgment interest. See *Kroger Co. v. U. S. Foodservice of Atlanta*[15] ("[t]he fact that the jury did not award the entire amount of [plaintiff's] claim did not make the damages unliquidated"); *Davis v. Carpenter*[16] ("[a]ppellant's reliance on the fact that the jury returned a verdict for [plaintiff] in an amount less than the figure prayed for by [plaintiff] is misplaced, since this fact in no way necessarily converted the claim for an otherwise liquidated amount into a claim for an uncertain and, therefore, unliquidated amount"); *Haygood*, supra, 80 Ga. App. at 465 (6) (the offset items "would only reduce the net balance of the plaintiff's liquidated demand"); *Council*, supra, 11 Ga. App. at 827 (4) ("[i]nterest will be allowed on money due where the debtor was able to

---

[11] *United States ex rel. Ga. Elec. Supply Co. v. United States Fidelity & Guar. Co.*, 656 F2d 993, 998 (5th Cir. 1981).

[12] *Uniflex Corp. v. Saxon*, 198 Ga. App. 445, 446 (5) (402 SE2d 67) (1991).

[13] *Wheat Enterprises v. Redi-Floors, Inc.*, 231 Ga. App. 853, 856 (1) (b) (501 SE2d 30) (1998).

[14] *Haygood v. Smith*, 80 Ga. App. 461, 465 (6) (56 SE2d 310) (1949).

[15] *Kroger v. U. S. Foodservice of Atlanta*, 270 Ga. App. 525, 532 (4) (607 SE2d 177) (2004).

[16] *Davis v. Carpenter*, 155 Ga. App. 301, 303 (2) (270 SE2d 810) (1980), rev'd on other grounds, 247 Ga. 156 (274 SE2d 567) (1981).

determine the amount, although the creditor may have claimed a greater sum than was actually due").

Here, the Espinosa companies prayed for and were awarded the exact amounts specified on their invoices, less a $3,000 offset to account for the rental of the equipment. The trier of fact rejected as without merit Hampshire Homes's claims of accord and satisfaction and its attempts to discount the invoices. Hampshire Homes could not unilaterally convert these liquidated demands into unliquidated demands simply by raising meritless defenses.

(c) *The Espinosa companies made the requisite pre-trial demand and prayer for interest.* Hampshire Homes claims that the Espinosa companies did not demand the liquidated amounts prior to trial. The record shows otherwise. And the Espinosa companies specifically and repeatedly prayed for interest under OCGA § 7-4-16. We discern no error in awarding them interest. See *Uniflex Corp.*, supra, 198 Ga. App. at 446 (5) ("[p]re-judgment interest may be awarded where, as here, evidence shows work was completed under the contract and payment was demanded prior to trial and the claimant prayed for pre-judgment interest").

3. Hampshire Homes complains in its fourth enumeration that the court did not make the requisite finding of bad faith to award attorney fees under OCGA § 13-6-11. Not only does Hampshire Homes ignore that the court also awarded attorney fees under OCGA § 13-11-8 (which does not require any such finding), but Hampshire Homes also waived this argument when it failed to make a post-judgment motion challenging the sufficiency of the trial court's findings of fact on this matter. See *In re Estate of Garmon.*[17] See also *Central of Ga. Elec. Membership Corp. v. Mills*[18] (failure to object to lack of bad faith finding in court's judgment waives issue on appeal). Moreover, the court here found that Hampshire Homes had been stubbornly litigious and further had caused the Espinosa companies unnecessary trouble and expense, which findings it supported with specific examples. Such constitute independent grounds for awarding attorney fees under OCGA § 13-6-11. We discern no error.

4. Finally, Hampshire Homes contends that when Espinosa *Construction* released a lien (which it had mistakenly placed on a home on which it did no work), that release effectively waived Espinosa *Concrete*'s right to sue Hampshire Homes on an invoice owed to Espinosa *Concrete* for its work on that home. This argument

---

[17] *In re Estate of Garmon*, 254 Ga. App. 84, 88 (4) (561 SE2d 216) (2002).
[18] *Central of Ga. Elec. Membership Corp. v. Mills*, 196 Ga. App. 882, 884-885 (397 SE2d 137) (1990).

fails for at least two reasons. First, evidence showed Espinosa Concrete was a separate entity from Espinosa Construction and had not authorized Espinosa Construction to act on its behalf. Second, even if Espinosa Construction had been acting on behalf of Espinosa Concrete, pursuing a lien on the improved property is only one avenue available to construction subcontractors to collect on unpaid invoices; pursuing and then discarding that avenue does not eliminate the second avenue of pursuing the underlying debt in a direct action against the debtor. A release of the lien releases the lien; it does not necessarily release the underlying debt. See, e.g., *Benning Constr. Co. v. All-Phase Elec. Supply Co.*;[19] *David Shapiro & Co. v. Timber Specialties*.[20] As evidence showed that the debt was unpaid, we will not disturb the trial court's factual determination that Espinosa Concrete's debt survived the release of the lien.

*Judgment affirmed. Ruffin and Bernes, JJ., concur.*

DECIDED DECEMBER 3, 2007.

*Louie B. Hendricks*, for appellant.
*Smith, Currie & Hancock, Stephen G. Joy*, for appellees.

---

[19] *Benning Constr. Co. v. All-Phase Elec. Supply Co.*, 206 Ga. App. 279, 280 (424 SE2d 830) (1992).

[20] *David Shapiro & Co. v. Timber Specialties*, 141 Ga. App. 354, 355 (4) (233 SE2d 439) (1977).