A07A1956. HATHAWAY DEVELOPMENT COMPANY, INC.
v. ADVANTAGE FIRE SPRINKLER COMPANY, INC.
(659 SE2d 778)

ANDREWS, Presiding Judge.

Hathaway Development Company, Inc. (Hathaway), a general contractor specializing in wood frame construction, appeals from the trial court's judgment, following a bench trial, in favor of its subcontractor Advantage Fire Sprinkler Company, Inc. (Advantage) on Advantage's claims for breach of contract and for recovery for extra work under quantum meruit.

When the trial court sits as the trier of fact, its findings and conclusions have the effect of a jury verdict. See *Wilson v. Prudential Indus. Properties*, 276 Ga. App. 180 (1) (622 SE2d 890) (2005), citing *McCain v. Galloway*, 267 Ga. App. 505 (600 SE2d 449) (2004). Thus, we will not disturb the trial court's decision if there is any evidence to support it. *Oates v. Sea Island Bank*, 172 Ga. App. 178 (1) (322 SE2d 291) (1984). Additionally, "we do not determine witness credibility or weigh the evidence and we view the evidence in the light most favorable to the trial court's judgment." (Citation and punctuation omitted.) *Chamblee Hotels v. Chesterfield Mtg. Investors*, 287 Ga. App. 342, 343 (651 SE2d 447) (2007).

So viewed, the evidence showed that Hathaway entered into two subcontracts with Advantage to install the sprinkler systems in two projects it was building, one in September 2003, for the Walden at Indian Creek Apartments in Huntsville, Alabama, and the second on November 5, 2003, for the Peachtree Hills Base Building in Atlanta. It is undisputed that work went smoothly on the Walden project and the sprinkler system was fully installed. According to Daniel Hathaway, vice president of Hathaway, Advantage "did everything it needed to do under that contract to get paid." Nonetheless, because of the dispute which developed over the Peachtree Hills project, Advantage did not receive its final payment due on the Walden project.

The Peachtree Hills project was a retail condominium complex, with retail space on the first and second floors and residential space on the third floor. The original design for the project was that the buildings were to be "shell buildings." The exteriors would be complete, but the interiors were to be left unfinished. Once the shell building is completed and the certificate of occupancy issued, the unit would typically be sold or leased to the owner or tenant who would then complete the interior to their specifications. The sprinklers were required to be installed in order to obtain the certificate of occupancy, but they would be redone in order to match the tenant/owner's layout. This work would normally be done months or even a year after the shell building's completion under a separate contract. Advantage had

a separate division which was devoted to interior finish work. The Peachtree Hills' subcontract with Hathaway was with Advantage's commercial division.

Hathaway got the plans for the project and bid it based upon those plans. Upon arriving at the project in March 2004, Advantage's field foreman Paul Bennett immediately noticed that the layout in the first building's interior was different from that depicted on the plans. Further, the project was already two months behind its construction schedule. Because the changes in the layout were going to require modifications to the sprinkler system and would involve increased costs, Bennett talked to Hathaway's site superintendent, Randy Guthrie, and told him that the changes would necessitate a change order, which is the subcontract mechanism for performing work outside of the original scope of the subcontract. According to Bennett, Guthrie told him to write the change orders up, but to save them until the end of the project and submit them then. Bennett so advised his superintendent, John Coady. Although the normal practice was to stop work and price the changes before doing the work, Coady told Bennett to keep track of the extra work and proceed with the job without stopping.

As the project proceeded, Advantage discovered that nearly every unit in every building contained changes from the original plans. This was because the owner of the project was contracting to sell the units to the individual unit owners who were then proceeding with the build-out of their units while construction was continuing. Instead of doing the work under a separate contract with a separate company division, as was normally done, Advantage was required to install sprinklers in the finished spaces as designed by the individual owners.

Advantage installed sprinklers in each of the five buildings in the project, making changes to the design of the systems as required. Once the sprinkler system had passed inspection by the City of Atlanta, Advantage submitted the cost of the changes made in the field, as instructed by Hathaway's agent. Coady called Daniel Hathaway, Hathaway's vice president, and told him the pay request for the changes was coming and Hathaway told him to send it and he would talk to the owner. Hathaway did not make any objection that the request was untimely. Advantage also submitted its pay application including the remaining balance it was due under the contract, minus the retainage Hathaway was entitled to hold under the subcontract.

Advantage was asked for further backup of the costs, which was provided. Daniel Hathaway then told Coady that, because some of the units had been sold, Advantage should submit the additional costs on these units on other unsold units so the costs could be recouped. Later, Coady received a phone call from Daniel Hathaway and a letter

stating that the request for change order had been rejected. Advantage was never told that the work required by its subcontract with Hathaway was incomplete or that Advantage would not be paid until the owner paid Hathaway. Advantage also did not receive the balance owed under the subcontract.

Only after filing its claim of lien on the project was Advantage advised that Hathaway believed that the job was incomplete. Unknown to Advantage, Hathaway had already retained U. S. Sprinkler to finish the work which was claimed to be incomplete. As shown during the trial, however, this work was in fact outside of the scope of the work that Advantage was retained to do. Even though Hathaway was not paid by the owner for this work, Hathaway paid U. S. Sprinkler $64,500 for it.

Advantage was not paid the balance owed pursuant to its subcontract on the Peachtree Hills job, the final payment due on the Walden Run job, or the costs requested for the changes.

1. Hathaway's first enumeration is that the trial court erred in denying its motion to stay pending arbitration.

"Under Georgia law, an agreement to arbitrate is waived by any action of a party which is inconsistent with the right of arbitration." (Citation, punctuation and footnote omitted.) *Griffis v. Branch Banking & Trust Co.*, 268 Ga. App. 588, 591 (2) (602 SE2d 307) (2004); see also *Burnham v. Cooney*, 265 Ga. App. 246, 247 (1) (593 SE2d 701) (2004).

> For example, we have held that a party who asserted a counterclaim and affirmative defenses, participated in discovery, and consented to an order extending discovery waived its right to arbitration by failing to assert it until after the extended discovery period ended. *Phil Wooden Homes v. Ladwig*, 262 Ga. App. 792, 793 (586 SE2d 697) (2003); *Griffis v. Branch Banking & Trust Co.*, [supra at] 590-591 (2). . . . Even a party who asserted a right to arbitration in its answer may waive that right by conducting discovery, moving for summary judgment, and entering a consolidated pre-trial order. *Wise v. Tidal Constr. Co.*, 261 Ga. App. 670 (583 SE2d 466) (2003).

*M. Homes, LLC v. Southern Structural*, 281 Ga. App. 380, 383 (636 SE2d 99) (2006).

Having not asked for a certificate of immediate review of the trial court's ruling on its motion for stay, and having filed a counterclaim claiming abandonment of the job and resulting damages, engaged in

discovery, and participated in the trial of the issues involved, Hathaway has waived its right to insist on arbitration. *M. Homes*, supra at 383.

2. In its second enumeration of error, Hathaway contends that the trial court erred in failing to enforce the subcontract's "pay when paid" clauses contained in Articles 5.7.4 and 5.8.1.

Although Hathaway argued below that the "pay when paid" clauses were a bar to recovery by Advantage, the order entered by the trial court does not address this issue. We hold that Hathaway waived this argument.

OCGA § 9-11-52 (c) provides:

> Upon motion made not later than 20 days after entry of judgment, the court may make or amend its findings or make additional findings and may amend the judgment accordingly. . . . When findings or conclusions are not made prior to judgment to the extent necessary for review, failure of the losing party to move therefor after judgment shall constitute a waiver of any ground of appeal which requires consideration thereof.

An appellant who intends to argue that the trial court's findings are inadequate or incomplete waives that argument by failing to make the post-judgment motion referenced in OCGA § 9-11-52 (c). *Hampshire Homes v. Espinosa Constr. Svcs.*, 288 Ga. App. 718, 720-721 (1) (655 SE2d 316) (2007); *Ruff v. Central State Hosp.*, 192 Ga. App. 631, 632 (1) (385 SE2d 734) (1989). See *Jewell v. State of Ga.*, 200 Ga. App. 203, 204 (1) (407 SE2d 763) (1991) (failure to object post-judgment to sufficiency of the findings in the court's judgment waives that matter on appeal); *Doe v. Chambers*, 188 Ga. App. 879, 881 (2) (374 SE2d 758) (1988) (same). In such cases, this Court does not remand for additional findings but simply affirms. See *Beeks v. Consultech, Inc.*, 222 Ga. App. 473, 474 (474 SE2d 675) (1996). See also *Safadi v. Thompson*, 226 Ga. App. 685, 686 (1) (487 SE2d 457) (1997) (physical precedent only).

We also note that the evidence before the trial court was disputed as to whether Hathaway had, in fact, been paid by the owner for the work performed by Advantage.

3. Finally, Hathaway argues that the trial court erred by awarding $4,000 to cover "design line items" which Hathaway contends Advantage abandoned.

Advantage made claims for breach of contract and quantum meruit for the change order work performed. The trial court correctly concluded that Hathaway and Advantage had engaged in a course of conduct whereby they departed from the contract's requirement for

written change orders to be submitted before the work was done. *Dept. of Transp. v. Dalton Paving &c.*, 227 Ga. App. 207, 215-216 (3) (489 SE2d 329) (1997). Therefore, the recovery granted on the extra work performed by Advantage without change orders was pursuant to the quantum meruit claim.

"[F]or a plaintiff to recover on a claim for quantum meruit, the [factfinder] must find that the plaintiff performed services valuable to the defendant and that the defendant accepted those services." (Emphasis omitted.) *Langford v. Robinson*, 272 Ga. App. 376, 379 (1) (612 SE2d 552) (2005). "When the value of the goods and services was not agreed upon prior to performance," the action is properly one for quantum meruit, and "the measure of damages is the reasonable value of [the] services or goods delivered." *Zampatti v. Tradebank Intl. Franchising Corp.*, 235 Ga. App. 333, 344 (10) (508 SE2d 750) (1998).

Hathaway argues that Johnny Coady, operations manager of Advantage, abandoned the claim for "design line items" based on one exchange during cross-examination regarding Advantage's Pay Application #7. That pay application, however, was submitted pursuant to the contract at a time when Advantage was under the impression that Hathaway was going to authorize and pay for work under the change order procedure in the contract. That was not done and the application was never paid.

Hathaway has provided no authority, and we are aware of none, that the quantum meruit claim was limited in any way by the pay application submitted pursuant to the contract.

There was no error as claimed by Hathaway in the trial court's award of damages. See *Cavin v. Powell*, 276 Ga. App. 60, 61 (1) (622 SE2d 415) (2005).

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED MARCH 19, 2008.

*McManus & Warlick, George W. Warlick*, for appellant.
*Anderson, Tate & Carr, Donald L. Swift III*, for appellee.